(April 2, 1896.)

## STATE v. BROWNE.

[44 Pac. 552.]

PRACTICE—CHALLENGES, PEREMPTORY, HOW TAKEN.—In the impaneling of a trial jury in a criminal case, where the defendant has double the number of peremptory challenges given the state, the state making the first challenge, the defense is required to make two before the state is again called upon to exercise its next peremptory challenge.

INDICTMENT—REASONABLE DOUBT—INSTRUCTIONS—SECTION 6975 OF THE REVISED STATUTES CONSTRUED.—In the prosecution of an indictment under the provisions of section 6975 of the Revised Statutes of Idaho, it is error to instruct the jury that before they can convict a defendant of a violation of the statute, they must be satisfied, beyond a reasonable doubt, that such violation of the statute was made with the intent feloniously and corruptly to wrong, cheat, or defraud the county of its money or property, or any part thereof.

(Syllabus by the court.)

WRIT of error from District Court, Latah County.

W. H. Clagett, Clay McNamee, and Sweet & Steele, for Plaintiff in Error.

Section 7848: After the jury is passed for cause, both parties alternately, beginning with the people, may take their peremptory challenges. But no challenge is lost by failure to alternate if the panel is opened by the other party; and each party is entitled to a full panel before exercising a peremptory challenge. It was contended by the district attorney in behalf of the people that to alternate, within the meaning of that statute, and within the general practice adopted in this state, meant that the state should exercise one challenge, the defendant two, and the state one, continuing upon this line until both parties had either

waived or exhausted their rights. When the statute is silent as to the order of conducting peremptory challenges, the matter seems to have been relegated to the discretion of the court, and it is a discretion which the higher courts have refused to review. (Thompson and Merriam on Juries, 291.) Upon the other hand, when the statute does prescribe the order of making these challenges, the court is without discretion and the order prescribed by law must be strictly adhered to. (Thompson and Merriam on Juries, p. 292, subd. 5.) In cases wherein the statute has fixed the question of intent the law is settled, because the statute is the law. If the state prove that the statute has been violated, the accused is called upon to justify his act, within that statute. (*Ex parte Hedley,* 31 Cal. 109; Idaho Const., art. 18, sec. 9.) It will be seen that in this case the constitution itself settles the question of intent, taking it entirely out of the rule first quoted. If the unlawful deposit be established we need go no further; we are not called upon to establish a felonious intent, and the accused is left to justify. (*People v. Cotteral,* 18 Johns. 115; *People v. Herrick,* 13 Wend. 87; 3 Greenleaf on Evidence, secs. 13, 21; *People v. Bedell,* 2 Hill, 194; *Commonwealth v. Hersey,* 2 Allen (Mass.), 178; *Commonwealth v. Wentworth,* 118 Mass. 441; *United States v. Cook,* 17 Wall. 538.)

Forney, Smith & Moore, for Defendant in Error.

At the threshold of this inquiry, we are met by this suggestion: Does not the section under which the defendants were indicted apply strictly to county and state officers, and every other person charged with the receipt, safekeeping, transfer and disbursement of public moneys? It is alleged that Gilstrap was a county officer; there is no allegation in the indictment that either Browne or Hattabaugh were county officers, or were persons charged with the receipt, safekeeping, transfer or disbursement of any public moneys whatever. "A statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act; because the common law does not." And further, "one who, while careful and circumspect, is led into a mistake of facts, and, doing what would be in no way reprehensible were they what he supposes

them to be, commits what under the real facts is a violation of a criminal statute, is guilty of no crime, because such is the rule of the common law, and in construction it restricts the statute." (2 Bishop on Criminal Law, 7th ed., secs. 286, 287.) It would certainly be error in the trial court to instruct a jury that, from the fact that a deposit was made, they would be justified in inferring that it was done with a felonious intent. (*People v. Carrillo,* 54 Cal. 63.)

HUSTON, J.—The defendant in error, Browne, was jointly indicted with one John Gilstrap and one Isaac C. Hattabaugh for violating the provisions of subdivision 4 of section 6975 of the Revised Statutes of Idaho. Said section provides, *inter alia:* "Each officer of this territory [state], or of any county, city, town or district of this territory [state], and every other person charged with the receipt, safekeeping, transfer or disbursement of public moneys, who . . . . [subdivision 4] deposits the same or any portion thereof in any bank or with any banker or other person, otherwise than on special deposit, ; . . . . is punishable by imprisonment in the territorial [state] prison for not less than one nor more than ten years, and is disqualified from holding any office in this territory [state]." The indictment charges, in substance, that Gilstrap, one of the defendants, was, at the general election held in November, 1894, elected to the office of treasurer of Latah county; that, subsequent to his said election, and on the 24th of December, 1894, said Gilstrap entered into a written contract with the other defendants, Brown and Hattabaugh, by the terms whereof he (the said Gilstrap) agreed to deposit in the Moscow National Bank, of which said Browne was president, and the Commercial Bank, at Moscow, of which said Hattabaugh was president, "any and all sums of money belonging to said Latah county, state of Idaho, coming into the possession of or under the control of the said John Gilstrap as treasurer of said Latah county; that, in pursuance of said contract, the said John Gilstrap did, as such treasurer as aforesaid, deposit with said banks large sums of the moneys of said Latah county, which had come into his hands as such treasurer as aforesaid." Defendants segregated on trial, and defendant Browne was tried and acquitted. This writ of error is sued out

by the state for the purpose of reviewing certain alleged errors of the district court upon said trial.

The first question presented for our consideration is the ruling of the district court in the matter of the impaneling of the trial jury. Section 7830 of the Revised Statutes provides that "if the offense charged is punishable with death, or with imprisonment in the territorial [state] prison for life, the defendant is entitled to ten, and the territory [state] to five peremptory challenges. On trial for any other offense, the defendant is entitled to six and the territory [state] to three peremptory challenges." Section 7848 of the Revised Statutes provides that, "after the jury is passed for cause, both parties alternately, beginning with the people, may take their peremptory challenges. But no challenge is lost by failure to alternate if the panel is opened by the other party; and each party is entitled to a full panel before exercising a peremptory challenge." In this case the trial judge required the state to make one peremptory challenge, and then the defendant one. This course would result in leaving the defendant with four peremptory challenges after the state has exhausted its number. We can conceive of but one theory upon which such rule could obtain, and that is that the criminal practice acts of this state are enacted for the protection of criminals—a doctrine which this court is by no means prepared to recognize. Where the statute gives to the state in criminal cases only one-half the number of peremptory challenges allowed the defendant, and requires such challenges to be made alternately, the defendant should be required to exercise two to the state's one. Any other rule would almost inevitably result in a complete subversion of the administration of the law in justice, as well as nullify all idea of alteration.

The next, and we believe the only other, question raised by this record, is in regard to the following instruction: "You must go further, and find, from the evidence, beyond all reasonable doubt, that in making said contract, and in making and receiving said deposit, the defendant and Gilstrap had a corrupt, fraudulent and felonious intent to cheat and defraud Latah county out of its money or property, or some part thereof." That the district court, in giving this instruction, entirely

lost sight, not only of the limitation which both the constitution and the laws place upon judicial functions, but overlooked or abrogated both the letter and the clear purpose of the statute upon which the indictment was based, is apparent. The statute for the violation of which defendant was indicted makes it a penal offense for any of the officers enumerated therein to deposit any public moneys, with the receipt, safekeeping, transfer or disbursement of which such officer is charged, "in any bank, or with any banker or other person, otherwise than on special deposit." Under the construction given by the district court to this statute in the instruction above cited, the statute is to all intents and purposes nullified both in letter and in spirit. It may be assumed that, at the time the defendants entered into the contract, they, nor either of them, had any intention of corruptly, fraudulently or feloniously cheating, wronging, or defrauding Latah county out of its money or property, or any part thereof. Nor was it essential or necessary to the establishment of their guilt under the indictment, that any such intent on their part should either be alleged, proven or found by the jury. No such language as that contained in the instruction is found in the statute, nor is any such intent made by the statute, nor can it be made, by any recognized legal rules of construction, an essential element of the crime defined in the statute. The statute is preventive. It contains ten subdivisions, specifically defining the acts which officers charged with the care and disbursements of the public funds are prohibited from doing, and the doing of either by such officer is punishable as a felony. If the obligations imposed upon this class of officers by the statute are onerous, or not in accordance with what business men conceive to be the best interest of the public, they should secure its repeal, or else care should be taken not to bring their consideration before the courts. It is the duty of the court to construe the law as it is, not as some would like to have it. To protect the revenues of the state, certain laws have been enacted. These laws are preventive in their character, but they are none the less obligatory. If courts can assume to say that the evil which the law was intended to prevent was never contemplated by the accused, when he violated the express provision of the law, and therefore he is not amenable, we might as well do away with

the legislative branch of the government, and rely entirely upon "judge made law." It should seem as though the legislature of our state had done their full duty in enacting statutes for the protection of the revenues of the state, and yet defalcations and misfeasance of public officers would almost appear to be the rule. If it were exactly known what percentage of our taxation arises from the defalcation of officers and the misappropriation of the public funds, and to what extent the public interest is sacrificed to private greed, it might not be so difficult to account for the "hard times" and high taxes of which all are complaining.

The ruling of the district court in requiring the defendant to exercise but one peremptory challenge to one by the state was error, and no such rule has ever obtained in this state outside of the present second judicial district. The instruction of the court as above cited was erroneous, and did not state the law.

Morgan, C. J., and Sullivan, J., concur.