Points Decided.

(April 23, 1915.)

## In Re Application of FRED L. HUSTON for Writ of *Habeas Corpus*.

[147 Pac. 1064.]

STATE AUDITOR — DUTIES OF — NOT CUSTODIAN OF PUBLIC FUNDS — APPLICATION OF SEC. 6975, REV. CODES—MISTAKE IN MINISTERIAL DUTIES—REMEDY.

1. In order to warrant a conviction under sec. 6975, Rev. Codes, it must be found that the defendant officer is, in the language of the statute, "charged with the receipt, safekeeping, transfer or disbursement of public moneys."

2. The state auditor in his official capacity as such officer is not the custodian of public moneys, within the meaning of sec. 6975, Rev. Codes, and is not properly classified with those public officers who receive public moneys, or are charged with safekeeping, transferring or disbursing the same, with relation to his official duties in drawing warrants on public funds.

3. Sec. 6975, Rev. Codes, was intended for the punishment of that particular class of public officers who, being charged with the custody of public funds, fraudulently appropriate to their own use or the use of another a portion of such funds, in violation of their trust.

4. It is not the intent of the law to hold a public official criminally responsible for a mistake of judgment, under a severe penalty in case he has made such mistake, in the absence of actual fraud, theft, conspiracy to cheat, or some felonious and unlawful attempt to deprive the state of its public moneys.

5. After a claim has been submitted to the state board of examiners as provided by law, and the same has been examined, audited and allowed, and the auditor directed to draw a warrant in favor of the claimant, it becomes the ministerial duty of the auditor to draw such warrant.

6. If a mistake is made by the auditor in drawing a warrant upon the wrong fund or item in the same department, in the absence of collusion, theft or actual fraud on the part of the auditor, resort should be had to the civil rather than the criminal law, in accordance with the following provision of sec. 145, Rev. Codes, as amended, Sess. Laws 1913, p. 57: "For the proper performance of the duties herein enjoined upon the state auditor, as secretary of the state board of examiners, or for any unlawful or irregular pay-

ment of any account submitted against the state, the state auditor is hereby made responsible upon his official bond."

7. *Held,* that as the facts alleged in the indictment do not state a public offense against the petitioner, he must be discharged, and it was so ordered.

Original application in this court by Fred L. Huston for a writ of *habeas corpus.* After hearing, the petitioner ordered discharged.

Edwin Snow, for Petitioner.

In all cases where it has been sought to indict state or county auditors under the provisions of this statute, it has been held that such officers are not "charged with the receipt, safekeeping, transfer or disbursement of public moneys" within the meaning of this statute. (*State v. Newton,* 26 Ohio St. 265; *State v. Myers,* 56 Ohio St. 340, 47 N. E. 138; *Moore v. State,* 53 Neb. 831, 74 N. W. 319; *State v. Moore,* 56 Neb. 82, 76 N. W. 474; *Sherrick v. State,* 167 Ind. 345, 79 N. E. 193; *State v. Pierson,* 83 Ohio St. 241, 93 N. E. 967; *State v. Heath,* 70 Mo. 565; 10 Am. & Eng. Ency. Law, 1019, 1020.)

The mischief sought to be remedied by statutes similar to the one under which this indictment was brought was the misuse for private purposes of public funds by officers who, by virtue of their office, had such funds in their custody and control. Indeed, in some cases, where statutes, word for word and exactly similar to ours, have been construed, it is plainly and clearly stated that the crime denounced is embezzlement. (*Storm v. Territory,* 12 Ariz. 35, 94 Pac. 1102.)

The state board of examiners, under the law and the constitution, has the sole and absolute discretion in regard to what are and what are not valid and just claims against the state. (*Bragaw v. Gooding,* 14 Ida. 288, 94 Pac. 438.)

It may have been irregular, or even wrong, to pay the $90 out of the particular fund from which it was paid, but it is absolutely unthinkable that the use of public money in payment of the state's just debts could be construed to be the

appropriation of so much money to the private use of the disbursing officer or of the person to whom it was paid.

"One cannot be convicted of embezzlement when it appears that all moneys collected by such person in his fiduciary capacity have been fully paid to the . . . . department of government to which the funds should have been paid. The case is not altered if the payments are made on the wrong account." (*United States v. Elvina,* 24 Philippine Rep. 230.)

Raymond L. Givens, E. P. Barnes and J. M. Parrish, for Respondent.

A deputy or subordinate officer cannot escape criminal liability by reason of having received orders from his principal to commit an illegal act. (*State v. Cutts,* 24 Ida. 329, 133 Pac. 115.)

The very terms of the general appropriation act (1913 Sess. Laws, p. 637) prescribed in sec. 1 thereof, negatives the defense of ignorance or excusable misinformation. Again, in sec. 4, page 645, the distinct duty is laid upon the state auditor to classify the vouchers as to the several departments and state institutions.

In addition to the plain wording of the statute, our own supreme court has passed upon the precise question involved here to the effect that there can be no payment of public moneys without an appropriation therefor, by reason of the constitutional and statutory inhibitions and regulations thereof, and that in the absence of such appropriation, the mere fact that the debt is a valid obligation against the state constitutes no defense. (*Kingsbury v. Anderson,* 5 Ida. 771, 51 Pac. 744.)

Since the Kingsbury case the rule laid down has never been deviated from, and in several recent decisions wherein the petitioner herein was party, our supreme court has re-enunciated the same rule, and the petitioner cannot claim, in the light of these decisions, absence either of knowledge of the facts or understanding as to the proper construction to be placed upon the law applicable to the matter at bar. (*Jeffreys v. Huston,* 23 Ida. 372, 129 Pac. 1065; *McPherson v.*

*Huston,* 24 Ida. 21, 132 Pac. 107; *Falk v. Huston,* 25 Ida. 26, 135 Pac. 745.)

In the light of these cases wherein the petitioner was defendant and is thus charged with knowledge as to the law because of the decisions of this court, his attempted defense of the custom or usage as sanctioning the payment of moneys from one appropriation or fund for services rendered in some other department is refuted. (*Stratton v. Green,* 45 Cal. 149; *People v. Commrs.,* 120 Ill. 322, 11 N. E. 180; *State v. Young,* 18 Wash. 21, 50 Pac. 786; *State v. Burdick,* 4 Wyo. 290, 33 Pac. 131; *In re Internal Improvements,* 18 Colo. 317, 32 Pac. 611.)

The indictment being based on sec. 6975, the mere doing of the act unlawfully is sufficient to sustain the indictment, irrespective of the intent; hence unnecessary to charge intent. (*State v. Browne,* 4 Ida. 723, 44 Pac. 552.)

The authorities are clear in regard to the making of separate and distinct appropriations for the different departments and the inhibition against payments for other purposes or from other funds. (*State v. Holmes,* 19 N. D. 286, 123 N. W. 884; *Menefee v. Askew,* 25 Okl. 623, 107 Pac. 159, 27 L. R. A., N. S., 537; *State v. Eggers,* 36 Nev. 372, 136 Pac. 100; *Spaulding v. People,* 172 Ill. 40, 49 N. E. 993, at 999; *Whittemore v. People,* 227 Ill. 453, 10 Ann. Cas. 44, 81 N. E. 427, at 432; *People v. Beveridge,* 38 Ill. 308; *State v. Ristine,* 20 Ind. 345.)

BUDGE, J.—The petitioner, Fred L. Huston, auditor of the state of Idaho, was indicted by the grand jury of Ada county, on January 13, 1915, which indictment, eliminating the title, reads as follows:

"James H. Wallis and F. L. Huston are accused by the Grand Jury of the County of Ada, in the State of Idaho, by this indictment of the crime of without authority of law appropriating public moneys committed as follows, to wit: That on or about the twentieth day of August, 1914, and before the finding of this indictment at Boise, in the County of Ada, State of Idaho, the said James H. Wallis then and there being the duly appointed, qualified and acting Dairy, Food

and Sanitary Inspector of the State of Idaho, and the said F. L. Huston, being then and there the duly elected, qualified and acting Auditor of the State of Idaho, and as such Auditor charged with the lawful disbursement of public moneys, did, wilfully, unlawfully, and feloniously and not in the due and lawful execution of their trust as such public officers appropriate funds and public moneys belonging to the State of Idaho, without authority of law to the use of Robert Wallis in the sum of Ninety ($90.00) Dollars, lawful money of the United States of America, by then and there paying to the said Robert Wallis, as salary, the said sum of Ninety ($90.00) Dollars, lawful money of the United States of America, out of the traveling expense fund of the said State Dairy, Food and Sanitary Department appropriation of the State of Idaho for services rendered in the Bacteriological Department of the Health Department of the State of Idaho.''

James H. Wallis is not a party to the petition herein for a writ of *habeas corpus* and is in no way connected with this proceeding.

This indictment was returned under sec. 6975, Rev. Codes. We will quote such portions of said section only as are conceded by counsel for respective parties to form a basis for this indictment, to wit:

''Each officer of this state, or any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either:

''1. Without authority of law, appropriates the same or any portion thereof to his own use, or to the use of another;

. . . .

''Is punishable by imprisonment in the state prison for not less than one nor more than ten years, and is disqualified from holding any office in this state.''

The facts in this case are not disputed and briefly stated are as follows:

Robert Wallis rendered services in the bacteriological laboratory for the months of June, July and August, 1914, at a fixed compensation of $90, for which amount he presented

a claim to the head of the department, which claim was subsequently filed with F. L. Huston, state auditor, as secretary of the state board of examiners. This claim was regularly listed and filed by said secretary with the state board of examiners as provided by law, and subsequently was by the board of examiners audited and duly allowed. Whereupon the state auditor was directed by the state board of examiners to draw a state warrant in favor of the claimant for the full amount of his claim. The bacteriological laboratory is under the supervision of the state board of health. The state dairy, food and sanitary department is likewise a department of the state board of health. The indictment charges, in effect, that the petitioner paid the said Robert Wallis the sum of $90, out of the traveling expense fund of the state dairy, food and sanitary department appropriation for services rendered in the bacteriological department of the health department of the state of Idaho. The gist of the offense charged appears to be that the money was paid out of the traveling expense fund of. the state dairy, food and sanitary department appropriation instead of being paid out of the appropriation for the bacteriological department of the health department of the state of Idaho. It will be remembered that both these departments are under the general supervision and are.integral parts of the state board of health. It is admitted that the services were rendered; that the amount charged for the services so rendered is not excessive; that the obligation was a valid claim against the state; that the petitioner in no way benefited, directly or indirectly, by reason of the employment of said claimant or. the payment of said claim; that the state lost no money, but that an honest valid obligation, lawfully incurred, was paid by the issuance of the warrant in question. The only contention on the part of the prosecuting attorney of Ada county is that these services were paid for from the wrong fund, or item of an appropriation made by the legislature for the maintenance of an integral part of a general department, and that this fact alone makes the state auditor guilty of a felony under sec. 6975, Rev. Codes, *supra,* to wit:

"Without authority of law" appropriating public moneys to his own use or that of another.

Sec. 6975, Rev. Codes, *supra,* is a criminal statute, enacted for the purpose of protecting the public revenue. It relates to state, county, city, town or district officers, and to every person charged with the *safekeeping, transfer,* or *disbursement* of *public moneys.* It makes certain specified acts crimes, punishable on conviction, in the state prison for not less than one nor more than ten years. This section is divided into ten subdivisions, each of which relates to a separate and distinct class or provision. Some acts mentioned are clearly *mala prohibita,* and on a trial involving such acts, it is not necessary, in order to establish guilt, to show intent on the part of the person charged. Such, for instance, is the offense prescribed in subdivision 4 of said section, to wit: Depositing public money "or any portion thereof in any bank, or with any banker or other person, otherwise than on special deposit, or as otherwise authorized by law." This subdivision of said section was construed by this court in the case of the *State v. Browne,* 4 Ida. 723, 44 Pac. 552, and is relied upon in order to secure a conviction of the defendant in the case at bar. There is, however, a clear distinction between that case and the case at bar. The facts are entirely different. The principles of law applied in that case cannot consistently be made applicable to the case at bar. In the case above cited, the indictment charged Gilstrap, county treasurer of Latah county, and Browne and Hattabaugh, codefendants, with having feloniously entered into a written contract by the terms of which Gilstrap agreed to deposit in the Moscow National Bank, of which Browne was president, and in the Commercial Bank at Moscow, of which Hattabaugh was president, any and all sums of money belonging to said Latah county, state of Idaho, coming into the possession of or under the control of Gilstrap as treasurer of said Latah county. That in pursuance of said contract, the said Gilstrap, as such treasurer as aforesaid, deposited with said banks large sums of money of said Latah county which had come into his hands as such treasurer as aforesaid, in violation of sec. 6975, *supra.* Gil-

strap was charged with the receipt, safekeeping, transfer, or disbursement of the public moneys of Latah county as treasurer of said county. He had the actual custody and control of the money and the corporeal possession thereof. He was aided and abetted in the wrongful and unlawful act of depositing the public moneys in the banks of his codefendants, contrary to law, by acting in collusion with Browne and Hattabaugh, who became principals in the violation of the provisions of said section 6975, *supra,* and were equally amenable under the law with the county treasurer, Gilstrap.

Is the petitioner, as state auditor, charged with the receipt, safekeeping, transfer or disbursement of public moneys, within the meaning of sec. 6975, Rev. Codes, *supra?*

The word "receipt" is defined by lexicographers as "an acknowledgment of the fact of payment."

The word "safekeeping" as defined by the same authorities is that "Where an instrument signed by a depositary, acknowledging that another person has deposited with him for 'safekeeping' a certain number of dollars in gold, which the depositary is to return when called for, such phrase implies that there is a special deposit." (*Wright v. Paine,* 62 Ala. 340, 344, 34 Am. Rep. 24.)

It must be admitted that only money in possession could be meant by the word "receipt" or "safekeeping."

The word "disbursement," which is used interchangeably with the word "transfer" in sec. 6975, *supra,* has been construed to mean "money expended by an executor, guardian, trustee, etc., for the benefit of the estate in his hands or in connection with its administration." This word is also defined in the Century Dictionary, vol. 2, p. 1644, as follows: "1. The act of paying out or expending as money. 2. Money paid out; an amount or sum expended, as from a trust, or a corporate or public fund; as, the disbursements of the treasury, or of an executor or a guardian." The Standard Dictionary, page 521, defines "disbursement," as, "1. The act or process of disbursing. 2. A sum paid out; money expended, especially from public funds."

The above definitions of the words, "receipt," "safekeeping," "transfer" and "disbursement" of public moneys are all inconsistent with any idea except that the person transferring or disbursing has the actual corporeal possession, control or custody of the thing sought to be transferred or disbursed.

The state auditor, in his official capacity, is not the custodian of public moneys within the meaning of sec. 6975, Rev. Codes, *supra*. He is not authorized to receive public moneys or to safely keep, transfer, or disburse the same. In order to warrant his conviction under sec. 6975, *supra,* it must be found that he is charged, or in some manner entrusted by law with the receipt, safekeeping, transfer, or disbursement of public moneys.

In our opinion, sec. 6975, Rev. Codes, *supra,* was aimed at the crime of embezzlement and against a particular class of persons who fraudulently appropriate to their own use, or to the use of others, not in the due and lawful execution of their trust, any property which comes into their possession or under their control by virtue of the official position which they hold or in violation of a trust. Under the law of this state, a state auditor does not come within the class of persons against whom said section is aimed, for the reason that he is not charged under the statute with the receipt, safekeeping, or disbursement of public moneys. He is but one of several whose combined acts are absolutely necessary to ultimately bring about the disbursement of public moneys.

From an examination of decisions construing practically the same provisions that we have in said section 6975, Rev. Codes, it has been universally held that auditors, who are not charged with the receipt, safekeeping, transfer, or disbursement of public moneys, do not come within the meaning of said section. (*State v. Pierson,* 83 Ohio St. 241, 93 N. E. 967; *State v. Heath,* 70 Mo. 565; 10 Am. & Eng. Ency. Law, 1019, 1020; *Moore v. State,* 53 Neb. 831, 74 N. W. 319; *State v. Moore,* 56 Neb. 82, 76 N. W. 474.)

When penalties are directed against a particular class, a description of the class and of the defendant as coming therein

are essential elements of the crime and must be charged and proved. (*Moore v. State, supra.*) Under the constitution and laws of this state certain officers are required to charge, collect and account for fees received for services performed in an official capacity, while other officers, performing like services, are not required to so charge, collect, or account for such fees. For example: Probate judges and other specified officers are required to charge and account for fees received by them for performing marriage ceremonies. Justices of this court and district judges are not, because they are not within a class who are charged with the receipt, safekeeping, or accounting of such fees.

In the case of the *State v. Newton,* 26 Ohio St. 265, the supreme court in construing section 6841, Revised Statutes of Ohio, which is similar to sec. 6975, Rev. Codes, said:

"Under the laws as they stood prior to the year 1858, the oath of office and official bond of a state or county treasurer were deemed sufficient, without the aid of criminal legislation, to insure the safety and proper application of all money that might come into their hands by virtue of their respective offices. . . . .

"The auditor of state as to the treasurer of state, and the county auditor as to the county treasurer, under the prior laws, stood in the same official relation to each other that they do now, and their relative duties were substantially the same. Under the prior laws, no one supposed that the county auditor was responsible for the public moneys in the hands of the county treasurer, and clearly the law imposed no such responsibility, and there was no complaint on the part of the public that the auditor of state or county auditor had not faithfully and satisfactorily performed their official duties; and hence, as to them, there existed no necessity for penal legislation. While this was the case in reference to state and county auditors, it was not so in reference to state treasurers, county treasurers, and other officers into whose hands the public moneys came by virtue of their offices or employment. Defalcations by these officers became frequent, the treasurers of state not excepted. The public money was squandered and lost;

. . . . In these respects, the evils became insufferable, and, for the purpose of remedying them, the legislature, in 1858, passed two statutes—the first entitled 'An act to further provide for the better regulation of the receipt, disbursement, and safekeeping of the public revenue' (S. & C. 1596) ; the second entitled 'An act to establish the independent treasury of the state of Ohio.' . . . . The provisions of these acts are much more stringent, in all respects, than those of previous acts, as applied to treasurers of state or county treasurers; . . . . it is impossible to avoid the conclusion that the penalties provided by the fifteenth section of the independent treasury act are particularly pointed at treasurers—state, county, township, city—and other officers whose duties are similar, and not at auditors of state or county auditors."

In the case of *Storm v. Territory,* 12 Ariz. 35, 94 Pac. 1102, the supreme court of the state of Arizona had under consideration sec. 439, Arizona Rev. Codes of 1913 (sec. 398, Penal Code, 1901), which is identical with sec. 6975, Rev. Codes, *supra.* The defendant, a county treasurer, had been convicted of embezzlement and on appeal the supreme court said: "The judgment and sentence of the court denominated the crime for which the defendant was indicted and convicted as embezzlement. It is contended that this is erroneous; that the crime is not embezzlement. That portion of sec. 398 of the Penal Code [sec. 439 of the 1913 Revision] under which the defendant was indicted and convicted reads: 'Every officer . . . . of any county, . . . . of this territory, . . . . charged with the receipt, safekeeping, transfer or disbursement of public moneys, who, . . . . without authority of law, appropriates the same or any portion thereof to his own use, . . . . is punishable, . . . . ' The appropriation by a county treasurer to his own use, without authority of law, of public moneys in his official possession, is fraudulent, and is therefore embezzlement. Therefore the judgment and sentence of the court are not erroneous in describing the offense of which defendant was convicted as embezzlement."

It is not charged in the indictment that the defendant Huston misappropriated public moneys which were actually

in his possession or under his control as state auditor, or that he aided or abetted the lawful custodian in misappropriating the same.

The state auditor cannot legally draw a warrant in favor of a claimant, such as the one described in the indictment, except as authorized and directed so to do by the state board of examiners, whose duties in this respect are prescribed by the provisions of sec. 146, Rev. Codes, as amended, Sess. Laws 1913, p. 58, reading as follows: ''It shall be the duty of the state board of examiners to examine all claims, except salaries and compensation of officers fixed by law. . . . . The board may approve or disapprove any claim or demand against the state or, any item thereof, or may recommend a less amount in payment of the whole, or any item thereof. . . . . But no claim shall be examined, considered or acted upon by said board, unless the state auditor, as secretary of the state board of examiners, shall have indorsed thereon the certificates required to be made by him by section 145h, and unless receipted vouchers are therewith showing the payment of all items for which reimbursement is asked.'' (*Thomas v. State,* 16 Ida. 81, 100 Pac. 761; *Winters v. Ramsey,* 4 Ida. 303, 39 Pac. 193; *Bragaw v. Gooding,* 14 Ida. 288, 94 Pac. 438; *State v. Hallock,* 20 Nev. 326, 22 Pac. 123; *Pyke v. Steunenberg,* 5 Ida. 614, 51 Pac. 614.)

The state treasurer is not only authorized under the law, but it is made his duty, as such officer, to refuse the payment of a state warrant drawn by the state auditor unless he is satisfied that it is a proper and legal charge against the state. (*Gibson v. Kay,* 68 Or. 589, 137 Pac. 864; *State v. Brown,* 10 Or. 215; *Crutcher v. Cram,* 1 Ida. 372.) A warrant drawn by the state auditor is but *prima facie,* and not conclusive evidence of the validity of the allowed claim, and unless there is authority of law for the payment of such claim, the treasurer may refuse, and indeed it is his duty to refuse, to pay the warrant, even if funds are appropriated. (*Goldsmith v. Baker City,* 31 Or. 249, 49 Pac. 973; *State v. Lindsley,* 3 Wash. 125, 27 Pac. 1019; *State v. Brown,* 10 Or. 215; *Shattuck v. Kincaid,* 31 Or. 379, 49 Pac. 758.) In the case of the *State*

*v. Hastings,* 10 Wis. 525, the court said: "And in respect to the auditor, to whom there is a delegation of authority to do all acts connected with accounts and claims against the state, and to certify them to the treasurer for payment, it may be said that he is a general agent. But it by no means follows therefrom, that all his acts are conclusive upon the state. There is a broad distinction in this respect between the acts of general agents of the public and those of general agents of private individuals or corporations. Whilst the latter may, and oftentimes do, bind their principals, when acting beyond the scope of their authority or instructions, yet the former never can."

An officer not charged by law to collect, and who has no right to the public money, cannot be convicted of embezzling money received under color of his office, though he falsely represented that he was entitled by virtue of his office to receive it. (*State v. Bolin,* 110 Mo. 209, 19 S. W. 650.)

In the case of *Sherrick v. State,* 167 Ind. 345, 79 N. E. 193, the court said (quoting from an opinion of Justice Marshall, in *United States v. Wiltberger,* 5 Wheat. 76, 96, 5 L. ed. 37) : " 'To determine that a case is within the intention of the statute its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions, so far as to punish a crime not enumerated in the statute because it is of equal atrocity or of a kindred character with those that are enumerated.' Penal statutes are to reach no further in meaning than their words. No person is to be made subject to them by implication; and all doubts concerning their interpretation are to preponderate in favor of the accused. . . . . *Johns v. State,* 19 Ind., at page 429, 81 Am. Dec. 408; Bishop, St. Crimes (3d ed.), sec. 190e; McClain, Cr. Law, sec. 85; . . . . *State v. Meyers,* 56 Ohio St. 340, 47 N. E. 138; . . . . To illustrate: A statute making a county treasurer who converts the public moneys in his custody guilty of embezzlement cannot be extended to embrace his deputy. (*State v. Meyers, supra.*)" In the case of *Sherrick v. State, supra,* the court further said: "Constructive crimes—crimes

built up by courts with the aid of inference, implication, and strained interpretation—are repugnant to the spirit and letter of the criminal law."

As we have heretofore stated, it is not alleged in the indictment that the defendant is a person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who, "without authority of law, appropriates the same or any portion thereof to his own use, or to the use of another"; but the pleader adroitly attempts to apply said statute by merely alleging that the state auditor, "as such auditor charged with the lawful disbursement of public moneys, did, willfully, unlawfully, and feloniously and not in the due and lawful execution of their [his] trust as such public officers [officer] appropriate funds and public moneys belonging to the State of Idaho, without authority of law by then and there paying to the said Robert Wallis, as salary, the sum of ninety ($90.00)" Not being charged with the receipt, safekeeping, transfer or disbursement of the public moneys under said section, he cannot be charged with the unlawful and felonious disbursement of said moneys not in the due and lawful execution of his trust. It is not contended that the money was appropriated for a personal use by the state auditor, but that he appropriated the public moneys to the use of another, by then and there paying to the said Robert Wallis, as salary, the said sum of $90, lawful money of the United States, out of the traveling expense fund of the state dairy, food and sanitary department appropriation of the state of Idaho, for services rendered in the bacteriological department of the health department of the state of Idaho. This would be a physical impossibility, for the reason, as above stated, he did not have the custody, control, or power to disburse public moneys. In drawing a warrant in favor of the claimant Wallis, he merely acted in a ministerial capacity.

It is not contended that the claim presented against the state was not a lawful claim authorized by law. It further appears that the claim was properly presented to the state board of examiners; that it was audited and allowed; that the auditor was directed by said board to draw a warrant in favor of the

claimant in full payment for the services rendered, as appeared upon the face of the claim presented to the state board of examiners and by said board allowed. The state board of examiners, under the law and the constitution, has the sole and absolute discretion in passing upon what are and what are not valid and proper charges against the state. A writ of *mandamus* will not lie to compel said board to act favorably or unfavorably upon a claim so presented. Neither will a writ of prohibition issue to restrain said board from allowing or disallowing a claim against the state. Under the law, it is incumbent upon a claimant to submit in proper form a claim against the state, accompanied by original vouchers or receipts of any evidence of indebtedness against the state. After a claim has been submitted to the state board of examiners as provided by law and the same has been examined, audited and allowed and the auditor directed to draw a warrant in favor of the claimant, in the absence of collusion, theft or actual fraud upon the part of the claimant and the auditor, or the claimant and the state board of examiners, although a mistake is made by the auditor in drawing said warrant upon the wrong fund or item in the same department, resort should be had to the civil rather than the criminal law, as provided by sec. 145i, chapter 15, Sess. Laws 1913, p. 57, which reads: "For the proper performance of the duties herein enjoined upon the state auditor, as secretary of the state board of examiners, or for any unlawful or irregular payment of any account submitted against the state, the state auditor is hereby made responsible upon his official bond."

It seems to us that it would be both cruel and inhuman to incarcerate a public official in the state penitentiary or to visit upon him the disgrace and humiliation of an indictment and trial, who, while acting in a ministerial capacity and under the direction of a properly constituted board—whose duty it is to audit, examine and allow claims against the state—drew a state warrant upon the wrong item in an appropriation for the maintenance of a department or an integral part thereof. There is no single question which has so often taxed the patience and industry of the courts as the question of deciding

just where and when "authority of law" does or does not exist. In deciding this question, courts and others learned in the law often disagree and are sometimes mistaken. The state auditor is not supposed to be an officer learned in the law, yet he is charged with the responsibility of deciding whether "authority of law" exists for paying a given claim out of a given fund; or, what amounts to the same thing, he must decide, in the first instance, whether there is any "authority of law" to make a given claim a charge against the state, and he must then determine out of which fund, under "authority of law," the claim may be paid. It never was the intent of the law to hold the state auditor, or any other public official, criminally responsible under a severe penalty, for a mistake in judgment when presenting or allowing a claim against the state, or for a failure to be always right in his decisions, in the absence of actual fraud, theft, conspiracy to cheat, or some felonious and unlawful attempt to deprive the state of its public moneys. Even the most learned and able judge might well shrink from accepting the responsibility of at all times being absolutely right in determining when a given claim is within or without "authority of law."

In the case of the *United States v. Elvina,* 24 Philippine Rep. 230, the court says: "One who has actually paid out the public funds in good faith to persons who have rendered services to the municipality of which he is treasurer, and under and in accordance with resolutions of the municipal council authorizing him to make such payments, is not guilty of the crime of misappropriation of public funds, although such payments may have been made in violation of law.

"Where the money alleged to have been misappropriated was paid out in the interest and for the benefit of the municipality, in good faith and in the honest belief that it was his duty as municipal treasurer to make such payment, such funds so paid out are not criminally misappropriated, although they may have been paid out on insufficient vouchers or improper evidence.

"Where a municipal treasurer makes an honest mistake as to the law or to the facts concerning his duties relative to the

expenditure of public funds, and actually and in good faith pays out such funds under such mistake, he is not guilty of the crime of misappropriation of public funds, although he may be civilly liable to reimburse the municipality.''

In this proceeding, the only question to be determined is the legality of the restraint under which the petitioner is held, and in view of the conclusions that have been reached in this case, we do not feel called upon to further construe sec. 6975, Rev. Codes, or the provisions of the general appropriation act passed by the 1913 legislature, Sess. Laws 1913, p. 637.

Having decided that the facts alleged in the indictment do not state a public offense against the petitioner, it follows that the petitioner must be discharged, and it is so ordered.

Sullivan, C. J., concurs.

MORGAN, J., Dissenting.—I find myself so completely out of accord with the majority of the court that a dissenting opinion will be necessary.

While the facts stated in the majority opinion are correct in most particulars, it may be well, in the interest of complete accuracy, to say that Robert Wallis did not present his claim to the head of the department in which he was employed, to wit, the bacteriological department of the health department, but that he did present it to, and it was certified to be correct by James H. Wallis, who was the head of the dairy, food and sanitary department, from the traveling expense fund of which the said claim for salary was paid, and that the said dairy, food and sanitary department is an entirely separate and distinct branch of the health department from the bacteriological department in which he was employed; also that each of these subdepartments of said health department was given separate and distinct appropriations for its maintenance by chap. 193 of the Sess. Laws of 1913.

It is the contention of the county attorney of Ada county, who appeared for the state in this case, that there was no authority of law for the payment of said claim out of the

dairy, food and sanitary department appropriation for services rendered in the bacteriological department of the health department, and, second, that it was improperly paid from the traveling expense fund of said dairy, food and sanitary department, since the payment was made for services rendered and was in the nature of a salary and could, by no stretch of the imagination, be included within an item of traveling expense, and that, therefore, the petitioner, an officer of this state charged with the safekeeping, transfer and disbursement of public moneys by issuing his warrant against said fund in payment of said claim appropriated $90 thereof without authority of law to the use of said Robert Wallis.

An examination of said chap. 193, Sess. Laws 1913, pp. 643 and 644, will disclose the different funds appropriated by the legislature for the maintenance of the health department, and among them will be found to be the following:

State Dairy, Food and Sanitary Department.

| | |
|---|---:|
| Salaries | $25,500 |
| Traveling expenses | 10,000 |
| General expenses | 4,500 |
| Total | $40,000 |

In order to fully understand the situation presented by the facts in this case it may be well to briefly refer to some fundamental principles of law.

In common with the other states of the Union, Idaho has adopted a form of government consisting of three co-ordinate branches, each supreme in its own particular sphere. Art. 2 of our constitution is as follows:

"The powers of the government of this state are divided into three distinct departments; the legislative, executive and judicial, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to

either of the others, except as in this constitution expressly directed or permitted."

Sec. 13 of art. 7 of the constitution is as follows:

"No money shall be drawn from the treasury but in pursuance of appropriations made by law."

Counsel for the state has, for our guidance, cited a number of decisions defining the word "appropriation," and it may be said that the following, in the light of all the authorities examined upon the subject, is a correct definition of the term:

"An appropriation, within the meaning of sec. 13, art. 7, of our constitution, is authority from the legislature, expressly given in legal form, to the proper officers to pay from the public moneys a specified sum, and no more, for a specified purpose, and no other."

It follows that no money may lawfully be paid from the treasury except pursuant to and in accordance with an act of the legislature, expressly appropriating it to the specific purpose for which it is paid. (See *Kingsbury v. Anderson,* 5 Ida. 771, 51 Pac. 744; *Jeffreys v. Huston,* 23 Ida. 372, 129 Pac. 1065; *McPherson v. Huston,* 24 Ida. 21, 132 Pac. 107; *Falk v. Huston,* 25 Ida. 26, 135 Pac. 745.)

Conforming to the duty enjoined upon it and pursuant to the authority vested in it, and in it alone, by the constitution, the twelfth session of the Idaho legislature, by said chap. 193, made appropriation of public moneys of the state of Idaho for the maintenance of the dairy, food and sanitary department as above stated. In order to safeguard the moneys of the state separate funds were created and, as above indicated, for the dairy, food and sanitary department there were created three funds, being a salary fund, traveling expense fund and a fund for general expenses. By reason of the peculiar duties devolving upon said department it must be manifest that, while the legislature could compute with accuracy the amount of money necessary to be appropriated to pay salaries, it could not accurately estimate the amount necessary to be paid for traveling expenses during the two years for which the appropriation was made. No man could

foresee the contingencies that might arise requiring the commissioner and his deputies to make trips over the state in the discharge of their duties; therefore, the legislature could and did appropriate just sufficient money, and no more, to pay salaries, but made an exceedingly liberal appropriation for the payment of traveling expenses so as to meet such emergencies as might or might not arise during the ensuing two years.

It will be observed that with a view to safeguarding the funds of the state so appropriated, the necessity for the expenditure of which might or might not arise, the appropriation was made in the following language:

"That the following sums of money, *or so much thereof as may be necessary,* are hereby appropriated for the payment of salaries and compensation of the state officers and employees of the state of Idaho and the general expenses of the state government, and for the support and maintenance of the several state institutions for the period commencing on the first Monday in January, 1913, and ending on the first Monday of January, 1915.. The sums hereinafter appropriated shall be paid out by the state treasurer *only upon warrants drawn by the state auditor* against the general fund of the state. That the amounts specifically appropriated for stated purposes by this act constitute the only amount appropriated, and to be used for any purposes during the years 1913–14." (Sess. Laws 1913, p. 638.)

Under our system of finance any moneys appropriated by the legislature for a specific purpose and not used for that purpose, at the end of the time for which it was appropriated, automatically lapses back and again becomes a part of the unappropriated public moneys of Idaho. Any portion of the $10,000 appropriated as a traveling expense fund for the use of the dairy, food and sanitary department during the biennial period of 1913–14, which was not used for that purpose and which was not misappropriated by the public officials, on the first Monday of January, 1915, became again unappropriated public moneys of the state. It must be apparent, then, that the acts of the petitioner here in issuing his

warrant in favor of Robert Wallis against the traveling expense fund of the dairy, food and sanitary department, in payment of a salary claim for services rendered in the bacteriological laboratory of the board of health, thereby procuring to be expended moneys from said fund for a purpose other than that for which the fund was created by the legislature, with the result that the moneys represented thereby did not revert to the general fund, amounted to a misappropriation of the public moneys of Idaho.

It has been stated in the majority opinion in this case that "the state lost no money, but that an honest, valid obligation, lawfully incurred, was paid by the issuance of the warrant in question." While it is entirely immaterial whether the state lost money or not, since that is not one of the elements of the crime charged, I do not so find. An examination of said chap. 193 convinces me to the contrary. The only appropriations of moneys made for the bacteriological department are: "Maintenance of laboratory, $2,000. Bacteriologist, $4,800," and I am taking it for granted that the words "maintenance of laboratory" refer to the bacteriological laboratory.

It is assumed that if the legislature had intended that Robert Wallis, or anyone else except the bacteriologist, was to be employed in the laboratory at the expense of the state, it would have made appropriation of money for the payment of his salary; no such appropriation having been made, the following language quoted from sec. 6 of said chap. 193, becomes strikingly applicable: "That no officer, employee, or state board of this state, or board of regents, or board of trustees of any institution in this state, or any member, employee or agent thereof, shall enter into any contract or agreement creating any expense, or incurring any liability, moral, legal or otherwise, or at all in excess of the appropriations made by law for the specific purposes for which such expenditure is to be made, or liability incurred, unless written authority to make such expenditure or to incur such liability has been previously obtained from the state board of examiners of the state of Idaho. Any person or persons violating the provi-

sions of this act shall be deemed guilty of a misdemeanor and shall be subject to removal from the position held, by order of the Governor of the state of Idaho. *Any indebtedness attempted to be created against the state in violation of the provisions of this act or any indebtedness attempted to be created against the state in excess of the appropriations provided for in any act shall be void.*"

It is not contended that any authority to employ Robert Wallis in the bacteriological laboratory was procured from the state board of examiners, and since no money was appropriated by the legislature with which to pay for his services therein, his claim against the state was void and was not "an honest, valid obligation, lawfully incurred," and when it was paid by the issuance of the warrant in question the state lost the money represented by it, the opinion of the majority of this court to the contrary notwithstanding.

The statute, for violation of which the indictment here under consideration was found, is as quoted in the majority opinion, but I am unable to agree that any of the subdivisions of said sec. 6975 are to be construed by any other rule of statutory interpretation than that applicable to the other subdivisions. It is said in the majority opinion that some acts mentioned in said section are clearly *mala prohibita*, and, as appears to my mind, all of the acts mentioned in said section are *mala prohibita*.

In the case of *State v. Browne*, 4 Ida. 723, 44 Pac. 552, cited in the majority opinion, the defendants were charged with a violation of sec. 6975, Rev. Codes, substantially in the language of subdivision 4 thereof, just as the petitioner is charged with a violation of said section substantially in the language of subdivision 1 thereof. In order that there may be no misunderstanding about that opinion and its correct application to this case, the part of it which refers to sec. 6975 of the Codes will be quoted at length, adopted and made a part of this dissenting opinion. It is as follows:

"The next, and we believe the only other, question raised by this record, is in regard to the following instruction: 'You must go further, and find, from the evidence, beyond all

reasonable doubt, that in making said contract, and in making and receiving said deposit, the defendant and Gilstrap had a corrupt, fraudulent and felonious intent to cheat and defraud Latah county out of its money or property, or some part thereof.' That the district court, in giving this instruction, entirely lost sight, not only of the limitation which both the constitution and the laws placed upon judicial functions, but overlooked or abrogated both the letter and the clear purpose of the statute upon which the indictment was based, is apparent. The statute for the violation of which defendant was indicted makes it a penal offense for any of the officers enumerated therein to deposit any public moneys, with the receipt, safekeeping, transfer or disbursement of which such officer is charged, 'in any bank, or with any banker or other person, otherwise than on special deposit.' Under the construction given by the district court to this statute in the instruction above cited, the statute is to all intents and purposes nullified both in letter and in spirit. It may be assumed that, at the time the defendants entered into the contract, they, nor either of them, had any intention of corruptly, fraudulently or feloniously cheating, wronging, or defrauding Latah county out of its money or property, or any part thereof. Nor was it essential or necessary to the establishment of their guilt under the indictment, that any such intent on their part should either be alleged, proven or found by the jury. No such language as that contained in the instruction is found in the statute, nor is any such intent made by statute, nor can it be made, by any recognized legal rules of construction, an essential element of the crime defined in the statute. The statute is preventive. It contains ten subdivisions, specifically defining the acts which officers charged with the care and disbursement of the public funds are prohibited from doing, and the doing of either by such officer is punishable as a felony. If the obligations imposed upon this class of officers by the statute are onerous, or not in accordance with what business men conceive to be the best interest of the public, they should secure its repeal, or else care should be taken not to bring their consideration before the courts. It

is the duty of the court to construe the law as it is, not as
some would like to have it. To protect the revenues of the
state, certain laws have been enacted. These laws are pre-
ventive in their character, but they are none the less obliga-
tory. If the courts can assume to say that the evil which the
law was intended to prevent was never contemplated by the
accused, when he violated the express provisions of the law,
and therefore he is not amenable, we might as well do away
with the legislative branch of the government, and rely en-
tirely upon 'judge-made law.' It should seem as though the
legislature of our state had done their full duty in enacting
statutes for the protection of the revenues of the state, and
yet defalcations and misfeasance of public officers would al-
most appear to be the rule. If it were exactly known what
percentage of our taxation arises from the defalcation of
officers and the misappropriation of the public funds, and to
what extent the public interest is sacrificed to private greed,
it might not be so difficult to account for the 'hard times' and
high taxes of which all are complaining.''

The majority of the court has not favored us with any
reason, and it may be said with confidence that none exists,
why one rule of interpretation should be applied to said sec.
6975 when the act complained of is a violation of subdivision
4, and consisted of placing moneys of a county on general de-
posit in a bank, and another rule of interpretation should be
used when the act complained of is a violation of subdivision
1 of said section and consisted of misappropriating the
moneys of the state in payment of a void claim for salary
out of the fund created by law for the payment of traveling
expenses to be incurred in a department other than the one
in which the claimant was employed.

The majority opinion decides that the state auditor is not an
officer charged with the receipt, safekeeping, transfer or dis-
bursement of public moneys, and is, therefore, incapable of
committing the crime charged in the indictment.

It will be observed that the statute under consideration
expressly prohibits ''each officer of this state, or of any
county, city, town, or district of this state, and every other

person charged with the receipt, safekeeping, transfer or disbursement of public moneys'' from doing the acts in said section mentioned. It may be well contended that any officer of this state, or any county, city, town or district of this state, whether charged with the receipt, safekeeping, transfer or disbursement of public moneys or not, and every other person who is charged with any or all of said duties may commit the crime described in said section, and the plain language of the statute seems to fully justify the construction. But assuming that only those officers who are charged with the receipt, safekeeping, transfer or disbursement of public moneys may violate this law, it appears to my mind to be perfectly clear that the state auditor is one of the officers so contemplated.

By the act of the twelfth session of the legislature, Sess. Laws 1913, chap. 15, pp. 54 to 58, from which the majority of the court quotes in support of its conclusion, it is made the duty of the state auditor to certify with respect to claims against the state submitted to the state board of examiners ''that the account is in proper form, that the totals given thereon are correct, that receipted vouchers, showing the payment of all items for which reimbursement is asked are submitted therewith, and that there are funds in the state treasury out of which the same may lawfully be paid.'' Upon the claim of Robert Wallis here under consideration, which shows upon its face that it was a claim for services rendered while said Wallis was employed in the bacteriological laboratory, the following indorsement was made by the petitioner as state auditor: ''I certify that the above account has been audited and found correct. That there is authority of law for its payment, and that there is sufficient money in the proper fund for its payment,'' and then, after said claim had been passed upon by the state board of examiners, he drew his warrant upon the traveling expense fund of the state dairy, food and sanitary department in payment of the claim.

It is perfectly clear that no money may legally be disbursed from the public treasury except upon the presentation of the auditor's warrant and, as has been suggested by counsel for

the state in this case, the warrant of the auditor, in the disbursement of public funds, is to be considered in a like sense and light as the check of an individual in the disbursement of his private funds from a bank. That the state auditor is an official charged with the disbursement of public funds and was so intended to be by the legislature, is made entirely clear by sec. 145i of said chap. 15, Sess. Laws 1913, as follows: "For the proper performance of the duties herein enjoined upon the state auditor, as secretary of the state board of examiners, or for any unlawful or irregular payment of any account submitted against the state, the state auditor is hereby made responsible upon his official bond."

It will be observed that the majority of the court also quotes this section in support of its conclusion, and suggests that a civil remedy has been provided for the wrongful disbursement of public funds. The answer to such contention suggests itself. While a civil remedy has been thus provided, it is not an exclusive remedy any more than is the civil remedy by way of suit upon the bond of any public officer for embezzlement of public funds an exclusive remedy.

Said sec. 145i does, however, provide which officer's bond shall be liable for any unlawful or irregular payment of any account submitted against the state, and that officer is the state auditor. To contend that the state auditor is not a disbursing officer, but that his bond shall be liable for an unlawful or irregular disbursement of public moneys, is inconsistent.

The majority opinion a little further on states the truth of the matter when it says "he is but one of several whose combined acts are absolutely necessary to ultimately bring about a disbursement of the public moneys." Being one of the persons whose acts "are absolutely necessary to ultimately bring about the disbursement of public moneys," he is one of the persons contemplated by sec. 6975, wherein it says: "Every officer of this state . . . . charged with the . . . . disbursement of public moneys who . . . . without authority of law, appropriates the same or any portion thereof to . . . . the use of another . . . . is punishable by imprisonment in the

state prison for not less than one nor more than ten years, and is disqualified for holding any office in this state.''

The conclusion reached by the court that ''sec. 6975 Rev. Codes, was aimed at the crime of embezzlement and against a particular class of persons who fraudulently appropriate to their own use, or to the use of others, not in the due and lawful execution of their trust, any property which comes into their possession or under their control by virtue of the official position which they hold or in violation of a trust,'' is not sound. There are ten subdivisions of said section, not one of which makes any reference to the crime of embezzlement or fraudulent appropriation of property. Sec. 7065, Rev. Codes, defines embezzlement as follows: ''Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted.'' Sec. 7066 relates to embezzlement by public and corporate officers and is as follows:

''Every officer of this state, or of any county, city, or other municipal corporation or subdivision thereof, and every deputy, clerk, or servant of any such officer, and every officer, director, trustee, clerk, servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement.''

It is impossible to imagine what necessity could have existed for the enactment of sec. 6975, if it was intended as an embezzlement statute, in view of the provisions of sec. 7066 above quoted. It is impossible to imagine, if the legislature intended sec. 6975 to be a law against the crime of embezzlement, why the word ''fraudulent'' was not used in order to bring the acts therein declared against within the definition of embezzlement as stated in sec. 7065. The correct conclusion to be reached is that said sec. 6975 was intended to mean exactly what it says, and was enacted for the purpose of the better protection of public moneys and to keep them from be-

ing carelessly or dishonestly dealt with under circumstances not amounting to embezzlement.

It is not to be understood that said section may be violated accidently, inadvertently or innocently, as is suggested by the language of the majority opinion, but if violated at all it must be done wilfully, unlawfully and feloniously, as charged in the indictment in this case. Sec. 6975 must be read and construed in the light of sec. 6314, Rev. Codes, which is as follows: "In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence."

Had this case been permitted to go to trial to a jury there can be no doubt that if the state failed to prove the petitioner guilty of having knowingly, wilfully and intentionally committed the acts complained of or that their commission was due to his criminal negligence, under a proper instruction a jury would have promptly returned a verdict of not guilty, and it would be the duty of this court to reverse a judgment of conviction unless it appeared that the acts charged in the indictment were so knowingly, voluntarily and purposely or negligently committed.

It must be borne in mind, however, that we are passing upon the sufficiency of an indictment which charges the acts to have been wilfully, unlawfully and feloniously committed. I am of the opinion said indictment charges the petitioner with the commission of a crime and that his petition for a writ of *habeas corpus* should be denied.