[No. 20519. In Bank. — August 1, 1889.]

## THE PEOPLE, RESPONDENT, v. CHARLES E. DE LAY, APPELLANT.

CRIMINAL LAW — EMBEZZLEMENT — ASSIGNMENT FOR BENEFIT OF CREDI-
    TORS. — If an assignee for the benefit of creditors fraudulently misappro-
    priates the trust property to the payment of his own claim, when he
    knows that the terms of the assignment require him first to pay a judg-
    ment against the insolvent debtor, or if he fraudulently appropriates the
    proceeds of sales and collections to his own use, accounting only for a
    smaller sum, he is guilty of embezzlement.  But the question of guilt or
    innocence does not depend upon the construction of the contract as to
    the order of payment of creditors.  It is the fraudulent misappropriation
    of the property that constitutes the gist of the offense.
ID. — OFFER TO RETURN EMBEZZLED MONEYS. — The fact that a person charged
    with embezzlement offers to return or pay over the moneys embezzled is
    no defense to the accusation.
ID. — CONTRACT OF INDEMNITY — EMBEZZLEMENT OF TRUST FUNDS. — The
    fact that an assignee for the benefit of creditors gives a written indem-
    nity to judgment creditors of the assignor, whom he is by the terms of
    the assignment first to pay out of the proceeds of the trust funds, in no
    way affects his guilt or innocence when charged with embezzling the
    funds intrusted to him for certain purposes by the assignor.
ID. — FAILURE OF ASSIGNOR TO DELIVER PROPERTY. — The fact that the as-
    signor did not turn over to the assignee for the benefit of creditors all
    the property assigned is no defense to a charge of embezzling property
    received and retained by him.  His only remedy for such failure on the
    part of the assignor would be to decline to proceed with the trust until
    the whole of the property was turned over to him; and so long as he
    retained any property under the contract, he was bound to use it as
    required by the provisions of the assignment.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Adair Welcker*, for Appellant.

*Attorney-General Johnson*, for Respondent.

PATERSON, J.—The defendant was charged with embezzlement and convicted. The chief contention of the counsel for appellant is, that the evidence is insufficient to justify the verdict. He obtained possession of the personal property of Mary Furlong under an assignment thereof to him for the benefit of her creditors. By the terms of the assignment defendant was required to apply the proceeds of all sales of property and the revenue received from the dairy and milk route to the payment of Mrs. Furlong's debts, which were classified in the written assignment and payments thereof required as follows:—

"1. In payment of any judgment that may be recovered by John Reis, plaintiff in an action instituted on the fourteenth day of July, A. D. 1886, wherein the said Reis is plaintiff, and I, the said Furlong, am defendant, etc.

"2. To pay to the said firm of De Lay Brothers whatever amount may be now due to them from me, or that may hereafter become due to them during the running of this agreement.

"3. To pay to R. B. Mitchell such moneys as may be now due to the late firm of Mitchell and Ricketts for fees and costs, etc.

"4. To pay all other unsecured debts that I may now owe, or which may become due from me during the running of this agreement; . . . . so much of said book-accounts as may remain uncollected, and whatever personal property or book-accounts, notes, demands, . . . .

shall be turned over to the said Furlong at the termination thereof; . . . . the attachment heretofore issued in the case of *Reis* v. *Furlong* to be released, the said De Lay indemnifying Matthew Nunan and Jeremiah Lowney, securities on the undertaking for release of attachment this day executed, against any loss by reason of their signing said undertaking as sureties."

The contract of assignment was executed by both parties on July 21, 1886. The defendant thereupon accepted the trust, took possession of all the property that could be found, and began to collect the book-accounts, sell the cows and other stock, and wind up the business. On November 15, 1886, nothing remained to be sold except a few heifers and calves and a grain-wagon. At that time defendant had received about three thousand dollars, and paid out about two thousand nine hundred dollars. Instead of applying the proceeds of the sales and of the business to the payment of the Reis judgment, which had been entered in the mean time against Mrs. Furlong for sixteen hundred dollars and costs, he appropriated the whole thereof— except about eighty-five dollars, which he offered to pay over—to the payment of the debt due himself and partner and a few small claims. In a statement rendered November 15th he gave as the total amount received from sales of milk the sum of $427.15. At the trial it was admitted by his counsel that he had received up to November 5th from sales of milk at least $737.40. The balance—$310.25— not accounted for by him is the amount charged in the indictment as having been embezzled. The driver of the milk-wagon testified that there had been collected $120 for which no receipts could be found, in addition to the above-named sum of $737.40.

Defendant testified that he did not understand from the agreement that he was to pay the Reis judgment first, and that be acted on the advice of his attorney in appropriating the proceeds to the payment of his own

and other claims. But there is evidence that he knew the terms of the contract required him to pay the judgment first. If he acted on the advice of his attorney, Mr. Wood, it is a singular fact that he did not call the latter to testify in his behalf; although, of course, if the jury believed the testimony of the defendant, his evidence on that subject was sufficient to establish the fact in his favor.

Evidently, however, the jury did not believe that he so understood the contract. At the time the contract of assignment was made, defendant gave Nunan and Lowney a written indemnity, in which he recites that: "Whereas, said Mary Furlong has this day made an assignment to me of all of her personal property *for the purpose of selling so much of the same as may be necessary to pay such judgment as may be recovered in the above-entitled action, as well as to pay off other indebtedness,*" and in which he promises to hold so much of the property assigned to him "by Mrs. Furlong, or the proceeds thereof, as may be necessary to satisfy any judgment that may be recovered by said Reis in said action, including all costs and interest." There is other evidence in the record tending to show that the defendant fully understood the obligation imposed upon him by the contract to pay the Reis judgment first out of the funds received from the sales and collections. The explanation given by the defendant as to the difference between the amount actually received from sales of milk and that reported is not very satisfactory. The court fully and fairly instructed the jury upon the law of embezzlement. They were told that "a person may receive property belonging to another, and appropriate it, and divert it from its true channel, and from the purpose for which he received it, but still he might not be guilty of embezzlement, and would not be, unless such diversion, or such appropriation or conversion by him, was of a fraudulent character and nature;

that it is the fraudulent misappropriation of the property that constitutes the gist of the offense."

The question of the guilt or innocence of defendant does not depend upon the construction of the contract as to the order of payments to creditors. If it be conceded that he might lawfully have appropriated the proceeds to the payment of his own and other claims before any payment was made upon the judgment referred to, the fact still remains that when called upon for an account he reported that he had received only $427.15, when in fact he had received at least $737.40. The balance—$310.25—is the amount which he is charged to have embezzled. Under the contract, he was bound to appropriate all the proceeds of sales and collections to the payment of Mrs. Furlong's debts, and return the balance, if any, to her. It was for the jury to say whether or not he intended fraudulently to appropriate the $310.25 retained by him. The fact that he afterward offered to return or pay over this amount is no defense herein. (Pen. Code, sec. 513.)

The error of the court in admitting the testimony of the witness Nunan was not prejudicial. The testimony elicited was simply a repetition of what had already been given. It was not contrary to the written instrument, nor did it in any manner add to its terms, but was in entire accord with the provisions thereof.

The fact that Nunan and Lowney took a written indemnity from the defendant in no way affects the guilt or innocence of the defendant, who is charged with embezzling the property intrusted to him for certain purposes by Mrs. Furlong.

Defendant claims that Mrs. Furlong did not turn over to him all the property called for by the assignment. Upon this question there is a conflict of testimony. Defendant, however, was not called upon to account for anything he did not receive. Mrs. Furlong testified that she gave him all the property that could be found,

and that he might have had the heifers and calves if he had called for them. The defendant is not charged with embezzling money collected by Mrs. Furlong, or property retained by her. If he was dissatisfied with his agreement on the ground that she had retained a portion of the property, or had collected some of the book-accounts, he should have declined to proceed further with his trust until the whole of the property was turned over to him. So long as he retained any property under the contract, he was bound to use it as required by the provisions thereof.

Judgment and order affirmed.

BEATTY, C. J., SHARPSTEIN, J., WORKS, J., and McFARLAND, J., concurred.