(No. 5407.   December 26, 1929.)

STATE, Respondent, v. S. H. SMITH, Appellant.

[283 Pac. 529.]

E. V. Boughton and N. D. Wernette, for Appellant.

W. D. Gillis, Attorney General, Fred J. Babcock, Assistant Attorney General, and E. T. Knudson, Prosecuting Attorney, Kootenai County, for Respondent.

WM. E. LEE, J.—The defendant, for ten years assessor of Kootenai County, was convicted of embezzlement. About the middle of November, 1928, it was discovered that he was short in his accounts. His resignation was accepted and his books audited. The audit disclosed a shortage on September 30, 1927, of $2,109.90, which, on November 16, 1928, had increased to $6,138.49. There is very little conflict in the evidence on material matters. Defendant admitted the existence of the shortage, that he had taken $585 thereof; but asserted that he did not know what had become of the balance. He testified that he discovered what appeared to be a shortage in connection with his July, 1928, report. He did nothing about it, however, until the shortage became known to others. Two hundred dollars of the admitted shortage was taken about May 16, 1928. Defendant claimed that he had $1150 in registered Liberty bonds in his safe at the time, and that on the next day he sent his wife to Spokane, Washington, for the purpose of having a bank there transmit the bonds to Washington, D. C., for payment so that he could "replace" the $200. In due time the Spokane bank received the remittance, but defendant did not replace the $200, or the $385 additional, which was taken later. The sum of $585 was tendered the county auditor after the criminal complaint had been filed. The July and August, 1928, reports were promptly prepared by a deputy and placed before defendant, but remained unsigned. The assessor was required to make his reports of collections to the county auditor, and thereupon pay the required amount to the treasurer. When the county auditor began to insist on the reports, defendant notified the agents of a surety company that he was short in his accounts about $5,682.10, claiming, however, that he had taken only $585 thereof. For the reason, as he explained, that he was legally responsible for the entire shortage, he showed that he obtained such financial assistance as to be in position to repay the entire shortage. However, it was not so paid. Appellant invested some $4,000 in oil lands in Montana, al-

though he explained that none of that money belonged to the county.

It is the position of defendant, on which he lays much stress, that there is an absolute lack of evidence to show that he ever "misappropriated" any of the funds of the county, except $585, as to which, he claims, there is a lack of evidence to show criminal intent, in the absence of which the conviction cannot stand. Without stopping to point out any distinction between C. S., secs. 8379 and 8451 (*State v. Browne*, 4 Ida. 723, 44 Pac. 552; *In re Huston*, 27 Ida. 231, 147 Pac. 1064; *People v. Church*, 3 N. Y. Crim. Rep. 57; *People v. Floyd*, 78 Cal. App. 11, 247 Pac. 917; *People v. Dillon*, 199 Cal. 1, 248 Pac. 230), it may be admitted that the information charges a violation of C. S., sec. 8451, the fraudulent appropriation by a public officer of funds in his possession and under his control by virtue of his office. It was necessary, therefore, as instructed by the learned trial judge, for the state to prove that, in the appropriation of the money to his own use, the defendant had a fraudulent intent to deprive the county thereof. And, in proving a criminal intent, all the facts and circumstances bearing thereon were admissible. The state was not bound by what the defendant said were his intentions.

"Since the crime of embezzlement depends upon the existence of a fraudulent intent in the mind of the person by whom the money or property is alleged to have been converted, a wide scope is given to the evidence which may be introduced by the state to show a fraudulent or criminal intent, or on behalf of the defense to show the absence thereof." (10 Am. & Eng. Ency. of Law, 2d ed., 1032.)

In *State v. Jester*, 46 Ida. 561, 270 Pac. 417, 419, this court quoted from *State v. McLennan*, 40 Ida. 286, 231 Pac. 718, as follows:

"'Circumstantial evidence is often the only means of establishing the ultimate fact of guilt; and such evidence alone will support a conviction if it produces a belief beyond a reasonable doubt in the minds of the jury that the accused

is guilty, and the conclusion of guilt need not necessarily follow from the circumstances in proof but may be obtained therefrom by probable deductions. . . . . ' ''

There was ample evidence from which the jury could infer a criminal intent. The $585 was taken at different times from May to November, and there was no tender of payment to the county until after the shortage had been discovered and the prosecution started. Appellant took his creditor into the basement of the courthouse and paid him $200 in currency belonging to the county, making no public record thereof. He did not disclose the fact that he was using public money for his private purposes until others had learned of the shortage. According to his testimony, he had $1150 in Liberty bonds, or the cash equivalent, when he admitted taking the several amounts, aggregating $585. That he used the county's money instead of his Liberty bonds, or his own money, and that he took his bonds into another state the day he took the first $200 of the admitted shortage, were facts for the consideration of the jury in determining whether the money was taken with the requisite criminal intent. As against the defendant's claim that he had no criminal intent in taking the money and that he intended to replace it, the state was entitled to have the jury weigh the fact that he did not replace the money; and the excuse therefor, that he was never in Spokane during banking hours, it was in the province of the jury to disbelieve. As stated above, the existence of a criminal intent may be inferred from all the facts and circumstances; and where the acts, constituting the appropriation, and knowingly or intentionally committed, with a consciousness that the appropriation was wrongful, a criminal intent may be inferred. As we read the record, there was ample evidence from which the jury might infer a criminal intent. Defendant relies strongly on *State v. Moyer*, 58 W. Va. 146; 6 Ann. Cas. 344, 56 S. E. 30. In that case a conviction for embezzlement was reversed, by a divided court, because the accused had not been permitted to show his financial condition, as bearing

on his good faith and an absence of criminal intent. There is no such question in this case. Defendant was permitted to show fully his financial condition, and makes no criticism of the action of the court in that regard. The decision is not particularly in point.

Appellant takes exception to instruction No. 10, which reads as follows:

"If from the evidence you are convinced beyond a reasonable doubt that the elements of the crime as I have heretofore instructed you have been proven, you are instructed not to consider any offer on the part of the defendant to restore the money as a defense. It is the law of this state that any intention on the part of the defendant to restore property embezzled is no defense."

There was no restoration. A mere intention to restore embezzled property is not a ground of defense. Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted (C. S., sec. 8450), and the fact that there is coupled with the misappropriation a mere intention to subsequently restore the embezzled property, does not purge the wrongful act of its criminal character or relieve the guilty person from punishment. The instruction was not incorrect. It is said in a California decision, *People v. Jackson*, 138 Cal. 462, 71 Pac. 566, 567, that:

"The language of the code seems clearly to imply that the fraudulent purpose to convert to one's own use may be coupled with an intention thereafter to restore the property to the true owner, and still the party be guilty of the crime of embezzlement, as defined in the statute." (See, also, *State v. Clark*, 47 Ida. 750, 278 Pac. 776; *State v. Baxter*, 89 Ohio St. 269, Ann. Cas. 1916C, 60, and note, 104 N. E. 331, 52 L. R. A., N. S., 1019, and note; *State v. Duerksen*, 8 Okl. Cr. 601, 129 Pac. 881, 52 L. R. A., N. S., 1013, and note; *State v. Bickford*, 28 N. D. 36, Ann. Cas. 1916D, 140, 147 N. W. 407; *People v. De Lay*, 80 Cal. 52, 22 Pac. 90; *People v. Royce*, 106 Cal. 173, 37 Pac. 630, 39 Pac. 524; *People v. McLean*, 135 Cal. 306, 67 Pac. 770;

*People v. Kirwin,* 87 Cal. App. 783, 262 Pac. 803; *State v. Larson,* (Wash.) 216 Pac. 28; *People v. Shears,* 158 App. Div. 577, 143 N.. Y. Supp. 861; *Dean v. State,* 147 Ind. 215, 46 N. E. 528; *Russell v. State,* 112 Ark. 282, 166 S. W. 540; *Heilman v. State,* 109 Neb. 15, 189 N. W. 303; *Cole v. State,* 134 Tenn. 645, 185 S. W. 691; *Glasheen v. State,* 188 Wis. 268, 205 N. W. 820.)

The defendant's requested instruction with respect to the credibility of witnesses was refused. The court gave an instruction on the subject, which the defendant claims did not cover the following matter contained in the requested instruction:

"If you believe that any witness has *wilfully* testified falsely to any *material* fact you may disregard the testimony of such witness entirely except in so far as it is corroborated by other competent proof."

That the court did not use this language in the instruction given must be admitted. It must be conceded also that, in other instructions, the court did not convey to the jury the exact thought contained in the above quotation. It, therefore, remains to consider whether the omission to give the requested instruction, in view of the position this court took in *State v. Waln,* 14 Ida. 1, 80 Pac. 221, and *State v. Boyles,* 34 Ida. 283, 200 Pac. 125, 126, requires a reversal of the judgment.

In the Waln case it was held that a failure to give a requested instruction in substantially the language contained in the above quotation, if not covered by other instructions, was error; and, stating that there were many conflicting statements of witnesses in that case, the judgment was reversed. In the Boyles case, this court may be said to have receded somewhat from the position taken in the Waln case, for it was held in the Boyle case that the refusal to give such a requested instruction is reversible error when it is clearly apparent from the record "that one or more witnesses have deliberately and wilfully given contradictory testimony as to a material fact, or there is a palpable and irreconcilable conflict between the evidence of different wit-

nesses as to material matters.'' Defendant has not pointed out, and a careful examination of the record fails to disclose, that any witness has deliberately and *wilfully* given ''contradictory testimony'' with respect to any *''material* fact,'' or that there is any palpable and irreconcilable conflict in the evidence of different witnesses ''as to *material* matters.'' We have reached the conclusion, therefore, that the court did not err in refusing to give the requested instruction.

After the case had been submitted, the jury returned into court and asked: ''If we find the defendant guilty of embezzlement of any part of the amount charged against him, does that imply he is guilty of all the amount he is charged with?'' Misunderstanding the reason for the inquiry, the judge proceeded to advise the jury on the question of punishment for embezzlement. When the judge found out what the jury wanted to know, he said: ''All that would be implied, in case of a verdict of guilty, would be that he did take part of the money. If they found him not guilty he would be dismissed on the ground that he did not take any of the money by embezzlement.'' By these remarks, the judge was not attempting to define the crime of embezzlement, but was informing the jury, and the jury evidently understood, that a verdict of guilty did not necessarily imply that the defendant was guilty of embezzling the entire amount with which he was charged; and that a verdict of ''not guilty'' would imply that he had not embezzled any of the money with which he was charged. It is evident that the jury had concluded that the defendant was guilty of the fraudulent appropriation of a portion of the money, but was not guilty as to all of it. The judge's reply was not incorrect (C. S., sec. 8461), and the jury promptly returned a verdict of ''guilty.'' No doubt the wording of the judge's remarks to the jury could have been improved upon, but they were spoken offhand. A careful consideration of the criticisms directed at the remarks made by the judge leads to the conclusion that the jury was not

misinformed as to the law, and that the defendant was not prejudiced.

A number of errors are assigned, eighteen to be exact, but most of them are not argued. There are assignments to the effect that the court erred in overruling the demurrer to the information, in refusing to strike "the evidence as to all sums in excess of $585," in overruling motion for a new trial, in entering judgment upon the verdict of the jury, and in the admission of certain testimony. These assignments are not argued in the brief and we are unable to determine from the assignments wherein it is thought that the court erred. A mere assertion that error was committed is not encugh. (*Bain v. Olsen*, 39 Ida. 170, 226 Pac. 668.) The burden is on one who appeals from a judgment of conviction to show that error was committed.

We have carefully studied the record, including the instructions, and it is our conclusion that defendant was afforded a fair and impartial trial and that the evidence sustains the verdict. The judgment is affirmed.

Budge, C. J., and Givens, T. Bailey Lee and Varian, JJ., concur.