554 P.2d 944

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Paul W. GOWIN, Defendant-Appellant.**

**No. 11883.**

Supreme Court of Idaho.

Sept. 24, 1976.

Darrel W. Aherin, Lewiston, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Rudolph D. Barchas, Lynn E. Thomas, Deputy Attys. Gen., Boise, for plaintiff-respondent.

PER CURIAM:

Defendant appellant Paul Gowin appeals from a judgment entered on a jury verdict finding him guilty of embezzlement by a servant[1] of property having a value in excess of $150.00, and the sentence entered thereon for an indeterminate maximum term of three years. Gowin's primary contention before this Court is that the state failed to prove beyond a reasonable doubt that he had a fraudulent intention to appropriate the items in question to his own use.

Gowin began working for Finke Lumber Company, Inc., of Pierce, Idaho, in early May, 1974, as a mechanic, working in the shop and on location at the site of logging

1. "18-2405. *Embezzlement by clerk, agent or servant.*—Every clerk, agent or servant of any person who fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of another which has come into his control or care by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement."

operations. He provided his own pickup truck and most of the tools he used on the job. Finke Lumber Co. installed a two-way radio in the truck in order to communicate with Gowin when he worked in the field. In the course of his employment, Gowin would also use many tools and other equipment which belonged to Finke Lumber Co., Inc., and these items were all kept in large tool boxes in the back of his pickup truck.

On Thursday, July 11, 1974, Gowin confronted Carl Finke, a co-owner of the corporation, with several complaints regarding the calculation of his paycheck. During this discussion, Finke acknowledged that Gowin had been underpaid for his mileage in the use of his truck on the job, and also promised to investigate his other complaints. It is not clear whether the other complaints were well founded, but at trial Finke testified that he no longer owes Gowin any money while Gowin claimed that Finke Lumber Co. still owes him $285.00.

Although Gowin testified that he continued to work for Finke Lumber Company on the following Friday and Saturday, July 12 and 13, he did not turn in a time card for any hours past Thursday, July 11. On the following Tuesday, July 16, 1974, Gowin sent a letter from his home in Lewiston to Carl Finke informing him that he was "fed up" and was quitting his job. This letter is hand written, and much of it is unintelligible. However, it is clear that Gowin intended to inform Finke by this letter that he would not return the various tools in his possession which belonged to Finke Lumber Company, Inc., including the radio, until the wage dispute was settled.

Upon receipt of this letter, Finke made no attempt to contact Gowin but went directly to the Clearwater County Sheriff in Orofino who drafted a criminal complaint and an affidavit for a search warrant based on the information contained in Gowin's letter and as supplied by Finke. Gowin was arrested while standing in the main street of Pierce near his truck, alleg-edly waiting for Carl Finke to return from lunch to discuss the dispute. Earlier that day, he had returned many of the missing tools to the Pierce Auto Supply (apparently owned by Finke's). A search warrant was obtained and Gowin's truck searched. The back of the truck was full of tools, tool boxes and personal property. The deputy who conducted the search of the truck stated at trial that some of the recovered tools were covered by other tools or were in tool boxes. He stated that Gowin himself assisted in identifying and turning over many of the items and that Gowin and Finke together removed the two-way radio from the dashboard of the truck.

Paul Gowin was charged by an information with violation of I.C. § 18–2405, embezzlement by a servant, of tools and equipment having a value of more than $150.00. At trial the defense moved that the information be dismissed and that the court order the entry of a judgment of acquittal because the state failed to present sufficient evidence to sustain a conviction of embezzlement by a servant. The defense particularly argued that the state had failed to prove the specific intent requirement set forth in the statute. The court denied the motion and the jury found the defendant guilty. Gowin was subsequently sentenced to a term of no more than three years.

■ The crime of embezzlement by a servant as defined in I.C. § 18–2405 consists of the criminal act which is the fraudulent appropriation by a servant of property of another which has come into his control or care by virtue of his employment, or the act of fraudulently secreting such property in order to appropriate it to his own use. The statute requires these acts to be done with "fraudulent" intent. The word "fraudulent" is not defined in our criminal code, but this Court has recognized that the term denotes a specific criminal intent requirement. *State v. Peters,* 43 Idaho 564, 253 P. 842 (1927). A general criminal intent requirement is sat-

isfied if it is shown that the defendant knowingly performed the proscribed acts, *State v. Booton*, 85 Idaho 51, 375 P.2d 536 (1962), but a specific intent requirement refers to that state of mind which in part defines the crime and is an element thereof. Lafave & Scott, Criminal Law, § 28, p. 196.

 It is extremely difficult to state precisely what is meant by the term "fraudulent"; it is a conclusory concept which modern criminal codes such as the Model Penal Code have avoided in favor of specific language delineating the proscribed state of mind. Generally, it can be said that a fraudulent intent requirement refers to a deceitful, or otherwise morally reprehensible state of mind.

I.C. § 18–114 requires that "[i]n every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence." I.C. § 18–115 states that "[t]he intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused." In *State v. Smith,* 48 Idaho 558, 283 P. 529 (1929), this Court stated that in proving the crime of embezzlement, the prosecution may rely on circumstantial evidence to establish fraudulent intent. In that case, the Court ruled that there was ample evidence from which the jury could infer a fraudulent intent.

 Upon examination of the record in this case, we conclude that the facts and circumstances surrounding Gowin's retention of the Finke Lumber Co. tools and radio not only do not support an inference of fraudulent intent, but they clearly negate such an intent. Gowin acted openly, informing Finke that he held these items as security for his wage claim, which Carl Finke had acknowledged was at least partially valid. Although it is the intent at the time of the appropriation that is at issue, we note that subsequent events—his cooperation and active assistance in recovering the tools, his open presence in Pierce while allegedly waiting to discuss the dispute with Carl Finke, and finally, the return of several of the retained items that morning prior to his arrest (*but see* I.C. §§ 18–2410–2412)—are again circumstances which would negate rather than support an inference of fraudulent intent.

We conclude that there was not sufficient evidence from which the jury could have concluded beyond a reasonable doubt that Gowin had a fraudulent criminal intent, and the trial court erred in refusing to grant Gowin's motion for judgment of acquittal. I.C.R. 29; *State v. Warden,* Idaho, 554 P.2d 684 (1976).

The judgment of conviction is reversed.