# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47667

STATE OF IDAHO,             )

                              )     **Boise, November 2021 Term**

    **Plaintiff-Appellant,**    )

                              )     **Opinion Filed: April 6, 2022**

v.                          )

                              )     **Melanie Gagnepain, Clerk**

**RUBEN DANIEL DIAZ,**    )

                              )

    **Defendant-Respondent.**    )

_____)

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jonathan Medema, District Judge.

The district court's decisions are <u>affirmed.</u>

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Appellant. Kale Gans argued.

Eric D. Fredericksen, State Appellate Public Defender, attorney for Respondent. Justin Curtis argued.

_____

BEVAN, Chief Justice.

In this permissive appeal, the State challenges the district court's order denying a motion to exclude expert testimony that Ruben Daniel Diaz lacked the mens rea to commit aggravated battery because he suffered from a mental illness or defect that caused him to believe the victim was not a person but instead an alien being from another planet. The State charged Diaz with aggravated battery, use of a deadly weapon in the commission of a crime, and resisting and obstructing a police officer after he stabbed a man in a random attack. The State filed a motion in limine to exclude Diaz's expert testimony, arguing Idaho Code section 18-207 bars expert testimony on evidence of a mental condition. The district court denied (1) the motion in limine, (2) the State's subsequent motion to reconsider, and (3) the State's motion for a permissive appeal. The State then timely filed a motion for permissive appeal to this Court, which we granted. For the reasons below, we affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

Clyde Gary Vinsonhaler was raking leaves in his front yard when he saw a stranger, Ruben Daniel Diaz, enter the cul-de-sac in his neighborhood. Vinsonhaler thought Diaz appeared "a little disoriented and confused," so Vinsonhaler asked Diaz where he was headed. Vinsonhaler thought Diaz "might have been in some kind of a convalescent home or something and had gotten out and was walking the neighborhood and was lost[.]" Diaz said something he "couldn't quite make out," but Vinsonhaler still believed Diaz was "just kind of disoriented" and began to back up to maintain distance between Diaz and himself.

Vinsonhaler did not feel threatened at this point but wanted to disengage from Diaz and thought he should go inside and contact police to have an officer "talk to him or help him or take him away[.]" Vinsonhaler walked across his front yard and through the gate into the backyard believing he had "left him out in the little side yard out in front of the house." Vinsonhaler thought he had time to go inside and call the police to have an officer come out and respond.

As he walked inside to contact police, Vinsonhaler thought he closed and locked the sliding patio door behind him, but he was not sure. In any event, Vinsonhaler was in the bedroom searching for the police dispatch number when he heard a noise coming from the hallway. When he looked into the hallway, he saw Diaz standing inside the house. Diaz "just stood there." Vinsonhaler recalled telling Diaz, "You don't belong here, you need to leave," but Diaz simply responded, "no."

As Vinsonhaler tried to flee the house, he made it to the front door and was standing with his back to Diaz when he felt something grab him from behind. The next thing Vinsonhaler felt was what he "thought was a pruning saw cutting my face." In fact, it was a knife. Diaz stabbed Vinsonhaler "[a]ll over"—on his face, "around the neck," and elsewhere, repeatedly saying, "I'm going to kill you." Both men wrestled over the knife for several minutes until law enforcement arrived and subdued Diaz with a taser. Vinsonhaler was severely wounded but survived. Even so, Vinsonhaler required several surgeries on his hands, face, neck, and throat area.

## B. Procedural Background

The State charged Diaz with (1) aggravated battery, (2) use of a deadly weapon in the commission of a crime, (3) and resisting and obstructing an officer. Later, the State filed an

2

Information Part II, and alleged Diaz was a persistent violator. Under Idaho Code 18-207, Diaz notified the State of his intent to introduce expert testimony at trial. Diaz intended to offer testimony from Dr. James Davidson "that Mr. Diaz was delusional at the time of the offense and that, while Mr. Diaz admits slashing and cutting Mr. Vinsonhaler with a knife, Mr. Diaz, at the time he made the decision to do so, believed Mr. Vinsonhaler was not a person, but was instead an alien."

In response, the State moved in limine to exclude the expert's testimony arguing it was irrelevant, prejudicial, and advanced a prohibited insanity defense. The district court denied the State's motion, holding that the evidence was relevant to prove a mistake of fact defense or otherwise negate intent. The State then moved for a permissive appeal, which the district court denied. The State filed a permissive appeal to this Court, which was granted.

## II. STANDARD OF REVIEW

"The trial court has broad discretion in the admission and exclusion of evidence and its decision to admit evidence will be reversed only when there has been a clear abuse of that discretion." *State v. Lopez-Orozco*, 159 Idaho 375, 377, 360 P.3d 1056, 1058 (2015) (quoting *State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438 (2005)). When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of four essentials: "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)). Whether evidence is relevant is reviewed de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).

A motion seeking a pretrial ruling on the admissibility of evidence is known as a motion in limine. Idaho's courts recognize the importance of a motion in limine. *State v. Young,* 136 Idaho 113, 120, 29 P.3d 949, 956 (2001). A motion in limine enables a judge to make a ruling on evidence without first exposing it to the jury. It avoids juror bias sometimes generated by objections to evidence during trial. The court's ruling on the motion enables counsel of both sides to make strategic decisions before trial on the content and order of evidence to be presented. *See generally Warren v. Sharp*, 139 Idaho 599, 605, 83 P.3d 773, 779 (2003), *overruled on other grounds by Blizzard v. Lundeby*, 156 Idaho 204, 322 P.3d 286 (2014). Since a motion in limine is based on an

3

alleged set of facts rather than the actual testimony, the trial court's ruling is not a final order. *Id.* The trial court may reconsider the issue at any time, including when the actual presentation of facts is made. *Id.*

## III. ANALYSIS

**A.    We affirm the district court's decision denying the State's motion to exclude the expert testimony of Dr. Davidson.**

The State challenges the district court's order denying its motion to exclude expert testimony, arguing the testimony was (1) irrelevant and inadmissible under Idaho Code section 18-207, (2) addressed an unavailable mistake of fact defense, and (3) was otherwise highly prejudicial. We affirm the district court's order.

> *1.    Expert testimony that Diaz did not know his victim was human was relevant to establish the elements of aggravated battery.*

The district court denied the State's motion in limine to exclude expected expert testimony from Dr. Davidson who would state that Diaz lacked the requisite mens rea to commit aggravated battery because he suffered from a mental disease or defect that caused him to believe the victim was an alien. Davidson planned to opine: "Mr. Diaz was delusional at the time of the attack and that, while Mr. Diaz admits slashing and cutting Mr. Vinsonhaler with a knife, Mr. Diaz . . . believed Mr. Vinsonhaler was not a person, but was instead an alien." The district court found Davidson's testimony was relevant, explaining in the order denying the State's motion to reconsider that Idaho Code section 18-903(a) and 18-907(b) required the State to "prove that a person willfully used force or violence upon the person of another and that the person had no lawful justification for doing so." According to Idaho Code section 18-903, which Diaz was charged under:

A battery is any:

(a) Willful and unlawful use of force or violence upon the person of another; or

(b) Actual, intentional and unlawful touching or striking of another person against the will of the other; or

(c) Unlawfully and intentionally causing bodily harm to an individual.

I.C. § 18-903. Subsection (a) requires the State to prove a person acted willfully. Diaz was also charged with aggravated battery—with the use of a deadly weapon or battery that caused great bodily harm. *See* I.C. § 18-907. Thus, at its core, as the district court correctly observed, this case

4

turns on what state of mind the State must prove the defendant had when committing battery. If the only state of mind required is that the defendant acted willfully, then expert testimony that Diaz lacked capacity to form intent is irrelevant. On the other hand, if the state of mind is something more—that the defendant knowingly performed the willful action—his alleged incapacity to form intent would be relevant.

Evidence is admissible only if it is relevant, and "relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. "Irrelevant evidence is not admissible." I.R.E. 402.

Though Idaho abolished the insanity defense, "Section 18-207, Idaho Code, does not prevent a defendant from presenting relevant evidence of his mental state." *State v. Beam*, 109 Idaho 616, 621, 710 P.2d 526, 531 (1985). Thus, Idaho Code section 18-207(3) does not "prevent the admission of expert evidence on the issue of any state of mind which is an element of the offense, subject to the rules of evidence." *State v. Fisher*, 162 Idaho 465, 467, 398 P.3d 839, 841 (2017) (quoting I.C. § 18-207(1)). In fact, evidence of mental condition is still expressly permitted to rebut the State's evidence offered to prove criminal intent or mens rea.

> Idaho Code § 18-207 does not remove the element of criminal responsibility for the crime. The prosecution is still required to prove beyond a reasonable doubt that a defendant had the mental capacity to form the necessary intent. Idaho Code § 18-207 merely disallows mental condition from providing a complete defense to the crime and may allow the conviction of persons who may be insane by some former insanity test or medical standard, but who nevertheless have the ability to form intent and to control their actions. The statute expressly allows admission of expert evidence on the issues of mens rea or any state of mind which is an element of the crime.

*State v. Samuel*, 165 Idaho 746, 770, 452 P.3d 768, 792 (2019) (quoting *State v. Card*, 121 Idaho 425, 430, 825 P.2d 1081, 1086 (1991)). "Whether the accused possessed the necessary intent to commit the offense is a question for the finder of fact." *State v. Oxford*, 167 Idaho 515, 523, 473 P.3d 784, 792 (2020). Thus, any expert testimony admitted on the issue of mens rea or state of mind under Idaho Code section 18-207, must speak to an element of the crime. *See Card*, 121 Idaho at 430, 825 P.2d at 1086; I.C. § 18–207(3).

Diaz argues that Idaho Code section 18-903(a) requires the State to prove that an accused willfully used force or violence on a person without justification. Diaz also suggests his intent when he committed the crime is relevant because Idaho Code section 18-207(3) specifically

permits a defendant to present evidence of a mental disease or defect that would negate intent. The State acknowledges it must prove "force or violence" was inflicted on the "person of another" under Idaho Code section 18-903(a) but maintains it need not also prove Diaz subjectively believed his victim was human. The State argues that because knowledge is not an element of aggravated battery under Idaho Code section 18-903(a), it need not prove Diaz subjectively knew his victim was human and as such, expert testimony that Diaz thought his victim was an alien was irrelevant and inadmissible under Idaho Code section 18-207.

The distinction between "willful" and "knowing" is an important one. Both terms speak to the mental state the State must meet in a criminal case. Idaho Code section 18-101(1) explains that "[t]he word 'wilfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." On the other hand, "[t]he word 'knowingly,' imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission." I.C. § 18-101(5).

Considering these two mental states, the district court explained:

> The state's argument here is that there was a purposeful and willful use of force or violence and that was clearly on the person of another. The question is simply, is it sufficient for the state to show that [Diaz] purposefully used force or violence upon something that turns out to be a person, or does the state have to show that he knew it was a person when he chose to use force or violence upon it? And I think that's the crux of this issue.

Indeed, that is the crux of the issue. And we conclude the State must show Diaz knew his victim was a person when he chose to use force or violence, not merely that he used force or violence upon something that turned out to be a person, as the district court explained. Here, expert testimony that Diaz suffered from a mental disease rendering him unable to make that distinction is, therefore, relevant. Diaz intended to put forth expert testimony from Davidson that "Diaz, due to his delusions, believed that he was attacking an alien." The State, for its part, must prove Diaz intended to attack a person—not an alien.

According to Idaho Code section 18-114, "[i]n every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence." The 'intent' as used in that section of the statute is construed to mean, "not an intent to commit a crime but is merely the

6

intent to knowingly perform the interdicted act . . . ." *State v. Parish*, 79 Idaho 75, 78, 310 P.2d 1082, 1083 (1957) (quoting *State v. Taylor*, 59 Idaho 724, 87 P.2d 454, 460 (1939)).

For aggravated battery, the state of mind required is that one willfully use force or violence against another. The statute does not, however, identify the requisite state of mind that one must possess while willfully using that force against another person. In other contexts, we have held that knowledge is an implied element of the offense, even though the statute does not expressly require knowledge. *See State v. Parish*, 79 Idaho at 79, 310 at 1083 ("knowledge is an essential element of the [traffic] offense, though the statute does not expressly require knowledge"); *State v. Bishop*, 146 Idaho 804, 816, 203 P.3d 1203, 1215 (2009) (interpreting Idaho Code section 18-705 as having three elements, one of which is that the defendant knew when resisting arrest that the officer was trying to perform an official duty).

We reach the same conclusion here. Although the plain language of the statute does not explicitly require the State show Diaz had knowledge that his actions would willfully injure another human, we hold that knowledge is implied from the statute and must be proven to sustain a conviction for the same.

The Idaho Court of Appeals has examined two cases involving the intent required for aggravated battery, which Diaz submits support his position and the district court's decision. In *State v. Billings*, 137 Idaho 827, 54 P.3d 470 (Ct. App. 2002), a defendant "aimed his shotgun to the right" of the victim and "fired into the ground." *Id.* at 828, 54 P.3d at 471. Pellets "ricocheted off the ground" and struck the victim. *Id.* The State charged Billings with aggravated assault and aggravated battery. *Id.* The State argued "the only intent the State was required to prove was that Billings intended to fire the shotgun." *Id.* at 829, 54 P.3d at 472. The court rejected that argument; instead, to prove aggravated battery, the State needed to prove that Billings intended the shotgun pellets to strike the victim. *Id.* at 830, 54 P.3d at 473. Even so, the court found there was sufficient evidence to support the knowledge element because Billings' intent could be inferred. *Id.* at 831, 54 P.3d at 474. The court explained the nature of the shotgun was one that fired scores of pellets, and that Billings knew that if the pellets hit the ground, "when there's gravel and stuff there, they can ricochet." *Id.* As a result, while there was no direct evidence that Billings intended to shoot his victim directly, the court held there was sufficient evidence that he was aware that some pellets would hit the victim, which was enough to meet the willfulness standard under Idaho Code section 18-903(a). *Id.*

7

Then, in *State v. Pole*, 139 Idaho 370, 79 P.3d 729 (Ct. App. 2003), the Court of Appeals again considered the requisite mental state for battery under Idaho Code section 18-903(a). Pole fired a .357 caliber pistol into the exterior wall of his apartment. *Id.* at 371, 79 P.3d at 730. Before discharging the weapon, Pole had pointed the gun at two of his roommates and suggested they play Russian roulette. *Id.* When the roommates declined, Pole turned and fired a round through the adjacent wall, hitting someone behind the wall in the adjoining apartment. *Id.* Pole was unaware the apartment was occupied when he fired the gun, but the bullet that went through the wall paralyzed the victim. *Id.* The Idaho Court of Appeals explained why Pole's conduct did not amount to aggravated battery:

> In this case, the evidence presented at the preliminary hearing failed to show that Pole knew the adjacent apartment bedroom was occupied at the time and that Pole intended that someone bear the brunt of the force or violence caused by the firing of the handgun. The evidence showed that Pole willfully pulled the trigger. However, the evidence did not show that Pole knew the victim was on the other side of the wall at the time.

*Id.* at 375, 79 P.3d at 734.

Diaz does not dispute that he committed an act that resulted in force or violence against another person, but according to the proposed expert testimony from Davidson, Diaz did not intend force or violence against a *person*. While the State argues that it need not prove Diaz's subjective beliefs, we find Diaz's argument more persuasive; the State cannot show that he intended a forceful or violent contact against another *person* if they cannot show he knew the subject of his attack is human.

Our decision today aligns with both *Pole* and *Billings*. Pole intended to shoot the wall, not another person, and the evidence did not show Pole *knew* the anyone was on the other side when he shot the wall. Billings intended to shoot another person, because he knew that if he shot the ground, the pellets would ricochet and hit his victim. The rationale underpinning both cases bolster our decision here that the pertinent fact is whether the defendant intends to use force or violence against another person. Here, we cannot conclude that expert testimony on whether Diaz intended to injure another person is irrelevant.

Both Diaz and the State also point this Court to Kansas's mens rea defense, which, like Idaho, does not allow the insanity defense but does permit a defendant to introduce evidence of mental illness if it negates intent. In *State v. Pennington*, 132 P.3d 903 (Kan. 2006), which the

State relies on, the defendant was charged with a general intent crime, and the defendant argued the lower court erred by excluding testimony from an expert that the defendant suffered a "serious delusional disorder," and his intent was "formed based on delusional thinking." *Id.* at 913. The Kansas Supreme Court held that such an argument was precluded by its mens rea approach identified in its statute:

> The problem with this argument is that under the *mens rea* approach, it is no longer relevant whether intent is formed rationally or whether it is formed based on delusions. As the [Kansas] Court of Appeals' majority correctly recognized, intent formed on the basis of delusions may have provided a defense under the prior insanity approach, but not under the *mens rea* approach.

*Id.* at 908. The State argues the same logic applies here, adding: the question is not *why* Diaz acted the way he did, whether his decisions made rational sense, or what he subjectively thought about objective facts when he chose to act. Rather, the State proposes the question of whether Diaz willfully and purposefully acted to stab the victim. Diaz admits he did.

In *Kahler v. Kansas*, 140 S.Ct. 1021 (2020), a second case Diaz relies on, the U.S. Supreme Court affirmed the Kansas mens rea defense. Notably, the Supreme Court explained:

> Kansas law provides that it is "a defense to a prosecution" that "the defendant, as a result of mental disease or defect, lacked the culpable mental state required" for a crime. That provision enables a defendant to present psychiatric and other evidence of mental illness to defend himself against a criminal charge. More specifically, the defendant can use that evidence to show that his illness left him without the cognitive capacity to form the requisite intent.

*Id.* at 1030 (citation omitted). We agree that Kansas's law is instructive, but we diverge from Kansas's approach in focusing solely upon the general versus specific intent distinction that its supreme court relied on in *Pennington*. Kansas's authority does not benefit the State here because the U.S Supreme Court noted the difference we note today. Based on the facts here, Davidson's proffered testimony suggests that Diaz's mental illness left him without the capacity to form the requisite intent. This holding reflects the mens rea defense recognized by both Kansas and Idaho. Idaho Code section 18-207 "expressly allows admission of expert evidence on the issues of mens rea or any state of mind which is an element of the crime." *State v. Samuel*, 165 Idaho 746, 770, 452 P.3d 768, 792 (2019) (quoting *State v. Card*, 121 Idaho 425, 430, 825 P.2d 1081, 1086 (1991)).

For these reasons, we affirm the district court's decision that expert testimony from Davidson on whether Diaz believed Vinsonhaler was human was relevant.

      2.      *Mistake of fact is an available defense to aggravated battery.*

Next, the district court found that the "State must prove Mr. Diaz knew he was using force on a person. Knowledge is a required element of the crime. Thus, a mistake of fact that disproves that knowledge is a defense under [s]ection 18-201 and 18-207." In reaching this conclusion, the district court also explained:

> [T]he legislature intended mistake of fact to be an available defense if the person, when the person chose to do the prohibited act, had a mistaken knowledge of some fact that disproves the mental state required to be guilty of the offense. Similarly[,] the legislature made clear in Section 18-207, that mental defect is a defense to any crime if it disproves the state of mind required to be guilty. I.C. § 18-207. "Criminal intent" in Section 18-201 does not automatically mean "intention," i.e., a desire to achieve a specific result. Criminal intent in Section 18-201 means the "state of mind" a person must have to be guilty of the crime, as the legislature defined it.

The district court clarified, "some crimes…require [] that to be guilty of that crime a defendant, when the defendant acts, must have a specific mental intention, i.e., a desire that the doing of the act will produce a particular result, either directly or by making it possible for the defendant to do some additional act." To that end, the district court reasoned that Section 18-201 and Section 18-207 permit Diaz to introduce the evidence "because [the] evidence concerns the state of mind which is an element of battery—knowledge that the actor is applying force or violence to another human." Thus, the district court correctly recognized the correlation between a mens rea defense and the available mistake of fact defense to seek to establish a lack of mens rea. This defense is a logical extension of the knowledge requirement addressed above.

Diaz claims that under the plain language of Idaho Code sections 18-201(1) and 18-207(3), mistake of fact is not limited to specific intent crimes. Instead, Diaz submits both statutes permit the defense so long as the proffered defense disproves "any criminal intent" or "any state of mind which is an element of the offense." The State contends that the defense would not negate any criminal intent, borrowing an analogy used by the district court of a hunter who mistakenly shoots a person believing the person was a deer. The State suggests that the hunter might reasonably claim such a use of force on the person was negligent, rather than willful, but that Diaz's proposed defense is not that he mistakenly used force or violence on the person, but that he did so intentionally.

The mistake of fact defense is authorized by Idaho Code section 18-201, which states, in part:

> All persons are capable of committing crimes, except those belonging to the following classes:

10

1. Persons who committed the act or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent.

....

I.C. § 18-201(1). Additionally, "I.C. § 18-207(c) specifically provides that a defendant is not prohibited from presenting evidence of mental disease or defect which would negate intent." *State v. Beam*, 109 Idaho 616, 621, 710 P.2d 526, 531 (1985). What we must discern is how Idaho Code sections 18-201(1) and 18-207(3) intersect, if at all, with aggravated battery.

Crimes in Idaho are categorized as either "general intent" or "specific intent" crimes. *State v. Stiffler*, 117 Idaho 405, 406, 788 P.2d 220, 221 (1990). Aggravated battery is considered a general intent crime. "A general criminal intent requirement is satisfied if it is shown that the defendant knowingly performed the proscribed acts. . . but a specific intent requirement refers to that state of mind which in part defines the crime and is an element thereof." *State v. Guerra*, ___ Idaho ___, ___, 497 P.3d 1106, 1123 (2021) (quoting *State v. Gowin*, 97 Idaho 766, 767–68, 554 P.2d 944, 945–46 (1976)). Whether a crime is a specific or general intent crime is a distinction "that has existed in our law throughout this century. This Court has [at times] relied on this distinction in determining when ignorance or mistake of fact is a defense under I.C. § 18–201(1)." *Stiffler*, 117 Idaho at 410, 788 P.2d at 225. Even so, as we discuss below, the distinction is not all-encompassing; this Court has tempered the distinction in explicit ways and we do so again in our holding today.

Neither party here contests that aggravated battery is a general intent crime. *See State v. Carlson*, 134 Idaho 389, 400, 3 P.3d 67, 78 (Ct. App. 2000) ("This form of battery, in Idaho, is a general intent crime."). The only question is whether mistake of fact is an available defense to aggravated battery. We conclude that it is, so long as the mistake of fact is a reasonable one. *See, e.g.*, *State v. Diaz*, 44 Kan. App. 2d 870, 874–75, 241 P.3d 1018, 1022 (2010) (explaining the principle that a reasonable mistake of fact may be asserted as a defense to a general intent crime); *State v. Kelsey*, 331 S.C. 50, 77, 502 S.E.2d 63, 77 (1998) (explaining that mistake of fact is an available defense only if the defendant can show a reasonable basis for having made the mistake);

Diaz first suggests, as did the district court below, that mistake of fact is an available defense to aggravated battery because this Court allowed the defense for another general intent crime: possession of a controlled substance. *See State v. Lamphere*, 130 Idaho 630, 945 P.2d 1 (1997). While this Court has permitted mistake of fact as a defense in such cases, we have done so

11

case-by-case when knowledge was recognized as a required element of the offense, even though the crime may be characterized as a "general intent" crime. Thus, a mistake of fact defense is available to negate the intent element in a limited subset of cases. As we concluded above, we now recognize knowledge as an element of aggravated battery. Since that is the case, a reasonable mistake of fact is an available defense in the very limited circumstances when knowledge that the victim is not a person is a tenable issue of fact.

Diaz submits that this Court's decision to permit a mistake of fact defense for a general intent crime like possession of a controlled substance, like in *Lamphere*, suggests that mistake of fact is available for aggravated battery. This is an overly broad characterization that we do not adopt. We have explained before that a mistake of fact defense is available only when the offense is one where specific criminal knowledge is an element of the crime. When such knowledge is not an element of the offense, the lack of knowledge or mistake of fact surrounding that element is irrelevant. *See State v. Sterrett*, 35 Idaho 580, 583, 207 P. 1071, 1072 (1922) (for illegal transportation of liquor, a general intent crime, "the good intentions and good faith of the person transporting the liquor is immaterial."). Yet because we hold that knowledge is an element of aggravated battery, we must also hold that a reasonable mistake of fact is an available defense to negate that element when an accused's knowledge is at issue.

In *State v. Fox*, 124 Idaho 924, 866 P.2d 181 (1993), this Court discussed the mental state that was an element of possession of a controlled substance as defined in Idaho Code section 37-2732(c). Idaho Code section 37-2732(c) does not expressly require any mental element, and Idaho Code section 18-114 requires only general intent. *Id.* at 926, 866 P.2d at 183. Even so, the defendant claimed he did not know it was illegal to possess the drugs he had, not that he was under a mistaken belief that he possessed them. *Id.* We declined to extend a mistake of fact defense to those facts because Fox was actually claiming mistake of law. *Id.*

Then, in *Lamphere*, this Court permitted mistake of fact as a proper defense for a defendant charged with possession of methamphetamine. We distinguished the case from *Fox* because Lamphere's defense was that he did not know what was in the vial he possessed, and testimony about his knowledge was, therefore, relevant to his possession charge. 130 Idaho at 633, 945 P.2d at 4. We also permitted a mistake of fact jury instruction in *State v. Blake* if the defense could prove the defendant believed the substance under Blake's seat was a harmless substance rather than methamphetamine or cocaine. 133 Idaho 237, 242, 985 P.2d 117, 122 (1999).

12

Thus, while these cases establish a line of general intent crimes in which knowledge is an element, these results have been limited to a narrow category of crimes based on our interpretation of the relevant statutes. *See, e.g.*, *State v. Bishop*, 146 Idaho 804, 816, 203 P.3d 1203, 1215 (2009) (explaining that a defendant is guilty of willfully resisting if the defendant knew the person was an officer); *Lamphere*, *supra*. Alternatively, we elected not to read a knowledge requirement into the statutory rape statute (Idaho Code section 18-6101(1)) because proof that a defendant had sexual intercourse with a victim who was under the age of eighteen was sufficient; the defendant's knowledge of the victim's age was irrelevant. *Stiffler*, 117 Idaho at 406, 788 P.2d at 221. We explained, "[i]f we were to determine that statutory rape requires only general intent, mistake of age would not be a defense, since any mistake of age would not disprove that Stiffler had sexual intercourse with a female under the age of eighteen." *Id.*

While the State argues that *Stiffler's* logic equally applies here, whether Diaz subjectively thought of the victim as a "person" or not, the distinction we draw lies in the differing mens rea elements between the two crimes. An accused can be convicted of violating the statutory rape statute whether he knows of the victim's age or not; an assailant who willfully inflicts an injury (as here) upon a person he believes is not a human (due to an issue with his state of mind), may present this defense "to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). Thus, the line of cases that encompass statutory rape and sexual assault are distinct from the offense here. We have noted as much before. *See State v. Herr*, 97 Idaho 783, 788–89, 554 P.2d 961, 966–67 (1976) ("Sexual offenses against minors have long been a recognized judicial exception to the general rule that a mistake of fact is a defense to a criminal charge."). And because of that, the sexual assault cases do not guide our inquiry today.

The interpretation we announce aligns with how other jurisdictions have examined the distinction we now delineate. In New Mexico, for example, its Supreme Court addressed when mistake of fact is an available defense, explaining:

> [The mistake of fact defense] is merely a restatement in somewhat different form of one of the basic premises of the criminal law. Instead of speaking of. . . mistake of fact. . . as a defense, it would be just as easy to note simply that the defendant cannot be convicted when it is shown that he does not have the mental state required by law for commission of that particular offense.

*State v. Bunce*, 861 P.2d 965, 968, n.3 (N.M. 1993). *See also People v. Crane*, 585 N.E.2d 99, 102 (Ill. 1991) (internal quotations omitted) ("Mistake of fact is a valid defense if the mistake negates

13

"the existence of the mental state which the statute prescribes with respect to an element of the offense."); *State v. Sexton*, 733 A.2d 1125, 1129 (1999) (quoting *State v. Cavness*, 911 P.2d 95, 99–100 (Haw. App. 1996) ("[I]f a person is ignorant or mistaken as to a matter of fact. . . the person's ignorance or mistake will, in appropriate circumstances, prevent the person from having the requisite culpability with respect to the fact. . . as it actually exists."). We adopt and follow this reasoning as consistent with Idaho Code section 18-207(3) and our holding above about the mens rea required to prove an aggravated battery.

The proposed defense Diaz seeks to put forward is that he was mistaken as to whether the being he stabbed was human. This defense is available to Diaz as he seeks to negate the state of mind relevant to the offense.

### 3. The district court did not abuse its discretion in determining the testimony would be admissible under Rule 403.

Finally, the State argues that even if the testimony is relevant, the district court should have excluded the proposed evidence as unfairly prejudicial under Idaho Rule of Evidence 403. Diaz contends he has a constitutional right to present a defense, which is protected by the Sixth and Fourteenth Amendments and that excluding Davidson's testimony would violate his right to present a defense.

The right to present a defense is protected by the Sixth Amendment of the United States Constitution and made applicable to the states through the due process clause of the Fourteenth Amendment. *Washington*, 388 U.S. at 19. "This right is a fundamental element of due process of law." *Id*. The right to present a defense includes the right to offer testimony of witnesses, compel their attendance, and to present the defendant's version of the facts "to the jury so it may decide where the truth lies." *Id*. All the same, this right must be balanced against any interest the State has in the criminal trial process; "the Sixth Amendment 'does not confer the right to present testimony free from the legitimate demands of the adversarial system.'" *State v. Albert*, 138 Idaho 284, 287, 62 P.3d 208, 211 (Ct. App. 2002) (quoting *Taylor v. Illinois*, 484 U.S. 400, 412–13 (1988)). Nor is a defendant free to present a defense based on irrelevant evidence. *State v. Meister*, 148 Idaho 236, 241, 220 P.3d 1055, 1060 (2009) ("A defendant has no right to present irrelevant evidence and even if evidence is relevant, it may be excluded in certain cases.").

The Rules of Evidence strike the appropriate balance by protecting the trial court's discretion to limit relevant evidence if the probative value is "substantially outweighed by the

14

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403. "This rule, however, does not require the exclusion of all prejudicial evidence, but only that which is unfairly prejudicial such that it tends to suggest a decision on an improper basis." *State v. Moore*, 131 Idaho 814, 819, 965 P.2d 174, 179 (1998). "The standard is not 'extraordinarily' prejudicial, but 'unfairly' prejudicial." *State v. Russo*, 157 Idaho 299, 309, 336 P.3d 232, 242 (2014).

As a result, the district court's determination of whether the probative value of evidence is substantially outweighed by unfair prejudice is reviewed for an abuse of discretion. *State v. Ehrlick*, 158 Idaho 900, 926, 354 P.3d 462, 488 (2015). When this Court reviews an alleged abuse of discretion by a district court, it analyzes whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

Below, the district court rejected the State's argument that jurors would feel sympathetic for Diaz and acquit him despite his guilt if the court permitted Diaz to present Davidson's opinion that Diaz did not know Vinsonhaler was a person when Diaz stabbed him. In the district court's ruling, it concluded that such an argument "fails to give jurors the trust they are due." To that end, the district court explained it "will almost certainly instruct jurors that neither sympathy nor prejudice may influence their deliberations. This court believes the vast majority of jurors work diligently to follow the court's instructions and those who do not have their behavior curbed by others." In reaching this conclusion, the district court did not discuss specific portions of Davidson's opinion. Instead, the district court addressed Davidson's report generally.

The State suggests that, even if the "court's sense that the juror's 'feelings of sympathy' would not be improperly stirred by the expert testimony," Davidson's opinion still invited jurors to decide the case on an improper basis. Davidson's report contained four opinions on Diaz's mental state:

1. It is my opinion that Mr. Diaz' psychotic thought process was present preceding, during and after the alleged offense
2. It is my opinion that Mr. Diaz' psychotic thought process, when present, is symptomatic of schizophrenia, paranoid type, a mental condition rooted in

15

neurobiological dysfunction that profoundly directs the thinking of an individual rather than a volitional condition. This opinion is supported by reports of bizarre functional behavior by Mr. Diaz, his mother, jail medical staff and deputy reports, police reports and witness statements of the alleged instant offense, and my assessment.

3. It is my opinion that Mr. Diaz, due to his delusion, believed that he was attacking an alien. He did not recognize or understand that he was attacking a human being.

4. It is my opinion that, as a result of severe mental disease or defect, Mr. Diaz suffered from a defect in reason and was unable to appreciate the nature and quality or wrongfulness of his acts at the time of the offense. In other words, at the time of alleged offense as a result of mental disease or defect he lacked substantial capacity either to appreciate the criminality/wrongfulness of his conduct or to conform his conduct to the requirement of the law.

As to the fourth opinion, the State contends that this opinion was unfairly prejudicial because it suggested the jury resolve the case under an incorrect legal standard.[1] The State suggests that Davidson's opinion was almost a verbatim quote from Idaho's former insanity defense, and that his opinion asked jurors to consider the case with a standard Idaho explicitly rejected when it abolished the insanity defense. The State's argument has some merit on its face, but it appears the district court has yet to conclusively rule on Davidson's opinion number 4, and there are additional failings to the State's argument on appeal.

First, we note that the State failed to identify which prong of the abuse of discretion standard the district court allegedly did not meet. While this Court does not impose a "formalistic requirement that the standard of review be recited and the party claiming error attack a particular prong of that standard of review," the State failed to even acknowledge in passing that the district court's decision was one of discretion. Such a failure is generally fatal to such an argument. *See State v. Jeske*, 164 Idaho 862, 870, 436 P.3d 683, 691 (2019) (explaining a failure to recite the standard of review is not fatal but the parties must argue the district court violated the abuse of discretion standard); *Cummings v. Stephens*, 160 Idaho 847, 853, 380 P.3d 168, 174 (2016)

---

[1] The Act adopting Idaho Code section 18-207 repealed the former versions of Idaho Code sections 18-207, 18-208, 18-209, 18-213 and 18-214. 1982 Idaho Session Laws, ch. 368, at 919. Former Idaho Code section 18-207 set forth the elements of the insanity defense in Idaho as the following: Mental illness as defense—(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. (2) As used in this act, the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct. This test is largely the same required by Idaho Code section 19–2523.

("[Appellant] makes no attempt to address the matters we consider when evaluating a claimed abuse of discretion."); *State v. Kralovec*, 161 Idaho 569, 575, n.2, 388 P.3d 583, 589, n.2 (2017) ("We note that this Court has seen an increasing number of cases where a party completely fails to address the factors we consider when evaluating a claimed abuse of discretion.").

Next, juries are presumed to follow the instructions given by the court. *State v. Carson*, 151 Idaho 713, 718, 264 P.3d 54, 59 (2011). The State points to no evidence in the record to overcome this presumption other than to suggest this Court "[p]ut aside for a moment the court's sense that the jurors' 'feelings of sympathy' would not be improperly stirred by the expert testimony[.]"

Further, the State fails to point to any indication that the district court intended to admit the limited portion (opinion number 4) the State challenges, or that the district court did not recognize the proper legal standard. Although the above-referenced portion of Davidson's opinion could confuse jurors by "asking the jurors to consider this case with the standard that Idaho specifically rejected when it abolished the insanity defense," the district court did not suggest it would allow Davidson to testify to opinion number 4. At the motion for reconsideration hearing, the district court stated as the hearing began:

> I'll start with the [S]tate's motion asking me to reconsider my denial of the [S]tate's motion to exclude testimony by Dr. Davidson on the basis that it was not relevant. That's what I think I'm here to decide today; although, there was some language in the [S]tate's briefing that seemed to suggest, the [S]tate viewed that I had made decisions differently than that, that I had made some decision about the ultimate admissibility of Dr. Davidson's opinions, or that I had made some rulings as to what the jury would be instructed, which I have not.

As a result, the State's argument for what the jury *might* consider and what the district court *could* allow is too speculative for us to make a definitive ruling at this stage in the proceedings. As noted above, the district court's ruling, as a decision in limine, remains subject to change at trial. *Warren v. Sharp*, 139 Idaho 599, 605, 83 P.3d 773, 779 (2003), *overruled on other grounds by Blizzard v. Lundeby*, 156 Idaho 204, 322 P.3d 286 (2014).

The State finally argues Davidson's opinion carried a risk of sympathy overwhelming the jury's impartial consideration of the issues. The State asserts that if a jury were to hear an expert state that Diaz "lacked substantial capacity" to "appreciate the criminality/wrongfulness of his conduct," this opinion would engender too much sympathy for Diaz by the jury. To that end, the

district court explained, "[t]he court will almost certainly instruct the jurors that neither sympathy nor prejudice may influence their deliberations." And:

> This court also believes it is unlikely jurors will be strongly moved to feel sympathy towards Mr. Diaz if they conclude that he randomly and violently attacked a stranger on the street simply because Dr. Davidson opines that Mr. Diaz's chronic behavior falls within one of the multitude of labels that psychiatrists use as a short-hand way to describe abnormal behavior patterns.

We agree with the district court's observations. As a result, we hold the district court did not abuse its discretion in finding the testimony about mens rea was not unfairly prejudicial.

## V. CONCLUSION

For these reasons, we affirm the district court's decisions to deny the State's motion in limine and to permit a mistake of fact defense.

Justices BRODY, STEGNER, MOELLER and Justice *pro tem* HORTON, CONCUR

18